IN THE SUPREME COURT OF NORTH CAROLINA

No. 368PA15

Filed 9 June 2017

JOHNNIE WILKES, Employee

v.

CITY OF GREENVILLE,
          Employer, SELF-INSURED

(PMA MANAGEMENT GROUP, Third-Party Administrator)


On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 777 S.E.2d 282 (2015), reversing in part and vacating and remanding in part an opinion and award filed on 9 April 2014 by the North Carolina Industrial Commission.  Heard in the Supreme Court on 15 February 2017.

*Hunt Law Firm, PLLC, by Anita B. Hunt; and Patterson Harkavy LLP, by Narendra K. Ghosh, for plaintiff-appellee.*

*Brooks, Stevens & Pope, P.A., by Matthew P. Blake, for defendant-appellant.*

*Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson; and Sumwalt Law Firm, by Vernon Sumwalt, for North Carolina Advocates for Justice, amicus curiae.*

*Young Moore and Henderson, P.A., by Angela Farag Craddock; and Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by M. Duane Jones, for North Carolina Association of Defense Attorneys, North Carolina Chamber, North Carolina Retail Merchants Association, North Carolina Home Builders Association, Employers Coalition of North Carolina, Property Casualty Insurers of America, and American Insurance Association , amici curiae.*

*Lewis & Roberts, PLLC, by J. William Crone and J. Timothy Wilson, for all amici; Teague, Campbell, Dennis & Gorham, LLP, by Bruce Hamilton, for North Carolina Association of Self-Insurers, and by Tracey Jones, for North*

*Carolina Association of County Commissioners; Allison B. Schafer, Legal Counsel, and Christine T. Scheef, Staff Attorney, for N.C. School Boards Association; and Kimberly S. Hibbard, General Counsel, for N.C. League of Municipalities, amici curiae.*

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner; and Law Office of David P. Stewart, by David P. Stewart, for Workers' Injury Law & Advocacy Group, amicus curiae.*

HUDSON, Justice.

Plaintiff Johnnie Wilkes appealed the opinion and award of the North Carolina Industrial Commission concluding that: (1) plaintiff failed to meet his burden of establishing that his anxiety and depression were a result of his work-related accident; and (2) plaintiff was not entitled to disability payments made after 18 January 2011. *Wilkes v. City of Greenville*, ___ N.C. App. ___, ___, ___, 777 S.E.2d 282, 284-85, 289 (2015). On appeal, the Court of Appeals unanimously vacated and remanded in part, holding that on remand in reviewing plaintiff's entitlement to medical treatment, the Commission should give plaintiff the benefit of a presumption that his anxiety and depression were related to his injuries, and reversed in part, holding that plaintiff had met his burden of establishing disability. *Id.* at ___, ___, 777 S.E.2d at 285-91. Because we agree that plaintiff was entitled to a presumption of compensability in regards to his continued medical treatment, we affirm that portion of the decision of the Court of Appeals. Because we conclude further that the Commission failed to address the effects of plaintiff's tinnitus in determining whether

he lost wage-earning capacity, we modify and affirm that portion of the Court of Appeals' decision, and remand for further proceedings not inconsistent with this opinion.

Background

Plaintiff was employed by defendant as a landscaper for approximately nine years before 21 April 2010, when he was involved in a motor vehicle wreck while on the job. Plaintiff was driving a truck owned by defendant when a third party ran a red light and struck plaintiff's vehicle. The truck then collided with a tree, causing the windshield to break and the airbags to deploy. Plaintiff was taken to the emergency room at Pitt County Memorial Hospital and treated for his injuries, which included an abrasion on his head, three broken ribs, and injuries to his neck, back, pelvis, and hip. The following day, plaintiff returned to the ER complaining of dizziness; an MRI revealed that plaintiff had suffered a concussion from the accident. Slightly over a week later, on 29 April 2010, defendant filed a Form 60 with the North Carolina Industrial Commission, in which defendant accepted plaintiff's claim as compensable under the Workers' Compensation Act (Act), and described the injury as "worker involved in MVA and had multiple injuries to ribs, neck, legs and entire left side." Defendant began paying plaintiff compensation for temporary total disability and provided medical compensation for plaintiff's injuries.

Plaintiff saw numerous physicians over the next year for treatment and evaluation of continuing complaints of pain in his back and leg, ringing in his ears

(tinnitus), anxiety and depression, and sleep loss. On 18 January 2011, defendant filed a Form 33 requesting that plaintiff's claim be assigned for a hearing before the Commission, stating that the "[p]arties disagree about the totality of plaintiff's complaints related to his compensable injury and need for additional medical evaluations." On 28 January 2011, plaintiff filed a Form 33 requesting an "Expedited Medical Motion" hearing, listing his work-related injuries as "head, back, depression, ringing in ears [tinnitus], memory loss, speech changes, dizziness, balance, etc.," and stating that he was "in need of additional medical treatment . . . specifically an evaluation by a neurosurgeon." After a conference call hearing on 4 February 2011, plaintiff saw Robert Lacin, M.D., a neurosurgeon; the Commission held a subsequent conference call hearing on 7 April 2011, and declined to refer plaintiff to a neuropsychiatrist.

Eventually, the matter was heard in person before Deputy Commissioner Mary C. Vilas on 21 September 2011, after which depositions of medical personnel were taken. On 1 February 2013, Deputy Commissioner Vilas entered an opinion and award determining that plaintiff's low back and leg pain, anxiety, depression, sleep disorder, tinnitus, headaches, and temporomandibular joint pain were causally related to his 21 April 2010 compensable injury. Deputy Commissioner Vilas also determined that plaintiff had established temporary total disability by demonstrating "that he is capable of some work but that it would be futile to seek work at this time because of preexisting conditions of his age, full-scale IQ of 65,

education level and reading capacity at grade level 2.6, previous work history of manual labor jobs, and his physical conditions resulting from his April 21, 2010 compensable injury." Accordingly, the deputy commissioner ordered defendant to pay plaintiff temporary total disability until he returned to work or until further order of the Commission and to pay all medical expenses reasonably required to effect a cure or lessen plaintiff's period of disability. Defendant appealed to the Full Commission (Commission).

The Commission heard the case on 4 November 2013, and considered the parties' stipulations, exhibits, testimony from multiple witnesses, including plaintiff and plaintiff's wife, and depositions taken from Doctors Albernaz, Tucci, Lacin, Schulz, Hervey, and Gualtieri. The Commission found that plaintiff suffered tinnitus as a result of the 21 April 2010 accident, but that the evidence regarding his alleged anxiety and depression was conflicting. The Commission noted, for example, that "Dr. Schulz diagnosed Plaintiff with malingering along with possible mild depression," and that "Dr. Gualtieri concurred with Dr. Schulz's diagnosis of symptom exaggeration and malingering." On the other hand, "Dr. Hervey disagreed with Dr. Schulz's malingering diagnosis . . . . Dr. Hervey noted 'apparent distress' and diagnosed Plaintiff with depression and anxiety," while Dr. Tucci diagnosed Plaintiff with "severe tinnitus" and testified that the tinnitus was "wrapped up with the anxiety or depression." Accordingly, the Commission found, in relevant part:

> 34.    Based on the preponderance of the evidence,

including testimony by Doctors Albernaz and Tucci, the Full Commission concludes that Plaintiff has not reached maximum medical improvement with regard to his tinnitus.

35.    Testimony by Plaintiff, Plaintiff's wife, and Doctors Lacin, Schulz, Hervey, and Gualtieri is conflicting as to whether Plaintiff is currently suffering from anxiety and depression. Based upon a preponderance of all the evidence of record, the Full Commission concludes that Plaintiff's alleged anxiety and depression was not caused by the 21 April 2010 work-related accident.

Based on these findings of fact, the Commission concluded that while plaintiff was entitled to medical compensation for his tinnitus, plaintiff had failed to meet his burden of establishing that he had anxiety and depression caused by his work-related accident, and that therefore, plaintiff was not entitled to medical compensation for those conditions. The Commission further concluded that plaintiff was not entitled to any disability payments made after 18 January 2011 (the date defendant filed a Form 33 requesting a hearing on plaintiff's claims), and that defendant was entitled to a credit for any payments it had made after that date. More specifically, the Commission made the following relevant conclusions of law:

2.    . . . Based upon all credible evidence, the Full Commission concludes that Plaintiff has met his burden of showing that on 21 April 2010 he suffered compensable injuries [to] his head and ears leading to tinnitus as a result of a traffic accident arising out of the course and scope of his employment with Employer-Defendant.

. . . .

4.    Plaintiff is entitled to the payment of past and

future medical expenses incurred for treatment that was reasonably required to effect a cure, provide relief or lessen any disability, including such further treatment for his tinnitus that may be recommended by Doctors Tucci and Albernaz.

5.    Where depression or other emotional trauma has been caused by a compensable accident and injury, and such depression or trauma has caused disability, then total disability benefits may be allowed. Here, the evidence is conflicting as to whether Plaintiff has suffered from depression and whether any depression was caused by the 21 April 2010 work-related accident. Based upon the preponderance of the evidence, the Full Commission concludes that Plaintiff has not met his burden of showing that his alleged depression and anxiety is a result of the 21 April 2010 work-related accident or has caused him any temporary disability.

6.    . . . The Full Commission concludes that Plaintiff has not presented evidence of a reasonable job search and has presented insufficient evidence that a job search would be futile. Thus, the Full Commission concludes that Plaintiff is entitled to temporary total disability benefits from the 21 April 2010 work-related injury until 18 January 2011, the date that Employer-Defendant filed a Form 33 requesting a hearing on Plaintiff's claims.

(Citations omitted.)  On 9 April 2014, the Commission issued its opinion and award, from which plaintiff appealed.

In a unanimous opinion, the Court of Appeals first vacated the portion of the opinion and award concerning plaintiff's request for additional medical treatment for anxiety and depression.  *Wilkes*, ___ N.C. App. at ___, ___, 777 S.E.2d at 287-88, 292. In light of the court's previous decisions in *Parsons v. Pantry, Inc.*, 126 N.C. App. 540,

485 S.E.2d 867 (1997), and *Perez v. American Airlines/AMR Corp.*, 174 N.C. App. 128, 620 S.E.2d 288 (2005), *disc. rev. improvidently allowed per curiam*, 360 N.C. 587, 634 S.E.2d 887 (2006), the court held that the Commission erred by not applying the rebuttable *Parsons* presumption to plaintiff's anxiety and depression, and instead placing the burden on plaintiff to demonstrate causation of those conditions. *Wilkes*, ___ N.C. App. at ___, 777 S.E.2d at 285-88. The court remanded the matter to the Commission to "apply the *Parsons* presumption and then make a new determination as to whether Plaintiff's psychological symptoms are causally related to the 21 April 2010 injury." *Id.* at ___, 777 S.E.2d at 287-88.

Additionally, the court reversed the portion of the Commission's opinion and award terminating plaintiff's total temporary disability benefits. *Id.* at ___, 777 S.E.2d at 292. Noting the testimony of Kurt Voos, M.D., who "authorized Plaintiff to return to work at sedentary duty with permanent restrictions including lifting up to 10 lbs with occasional walking and standing," the court stated that based on this testimony the Commission had found that plaintiff was "incapable of returning to his previous job but is capable of working in sedentary employment." *Id.* at ___, 777 S.E.2d at 289. The court also took note of other facts found by the Commission:

> Specifically, the Commission found that Plaintiff (1) was 60 years old at the time of the hearing; (2) had been employed as a landscaper with Defendant since 2001; (3) had been employed in medium and heavy labor positions throughout his entire adult life; (4) attended school until the tenth grade; (5) was physically incapable of performing his former job as a landscaper/laborer; (6) has "difficulty

reading and comprehending" written material as evidenced during his evaluation with Dr. Peter Schulz; and (7) has "an IQ of 65, putting him in the impaired range."

*Id.* at \_\_\_, 777 S.E.2d at 289. The court held that with this evidence, plaintiff had met his initial burden of showing that a job search would be futile so as to shift the burden to his employer to show that suitable jobs were available. *Id.* at \_\_\_, 777 S.E.2d at 289-90. Because defendant made no such showing, the court concluded that "the Commission erred in ruling that Plaintiff was not temporarily totally disabled," and that the Commission's "conclusions of law reaching the opposite result were not supported by the findings of fact contained within its Opinion and Award." *Id.* at \_\_\_, 777 S.E.2d at 291.

Defendant filed a petition for discretionary review, which this Court allowed on 13 April 2016.

## I. Medical Compensation

Here defendant argues that the Court of Appeals erred in holding that plaintiff was entitled to a presumption that his anxiety and depression were causally related to his compensable injuries. We do not agree, and affirm the Court of Appeals on this issue.

Our review of an order of the Commission is limited to determining "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion*

*Int'l Corp.,* 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000); *see also* N.C.G.S. § 97-86 (2015). But, "[w]hen the Commission acts under a misapprehension of the law, the award must be set aside and the case remanded for a new determination using the correct legal standard." *Ballenger v. ITT Grinnell Indus. Piping, Inc.,* 320 N.C. 155, 158, 357 S.E.2d 683, 685 (1987) (citing, *inter alia, Conrad v. Cook-Lewis Foundry Co.*, 198 N.C. 723, 153 S.E. 266 (1930)). "When considering a case on discretionary review from the Court of Appeals, we review the decision for errors of law." *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 368 N.C. 609, 611, 781 S.E.2d 282, 284 (2016) (citing N.C. R. App. P. 16(a)).

In construing the provisions of the Workers' Compensation Act, "[w]e have held in decision after decision that our Workmen's Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees or their dependants, and its benefits should not be denied by a technical, narrow, and strict construction." *Hollman v. City of Raleigh*, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968) (citing 3 Strong's North Carolina Index: *Master and Servant* § 45 (1960)). But, we are mindful that the Act "was never intended to be a general accident and health insurance policy." *Weaver v. Swedish Imports Maint., Inc.*, 319 N.C. 243, 253, 354 S.E.2d 477, 483 (1987). We have also noted that "[t]he primary purpose of legislation of this kind is to compel industry to take care of its own wreckage." *Barber v. Minges*, 223 N.C. 213, 216, 25 S.E.2d 837, 839 (1943); *see also Deese v. Se. Lawn & Tree Expert Co.*, 306 N.C. 275, 278, 293 S.E.2d 140, 143 (1982) ("[I]n all cases of doubt,

the intent of the legislature regarding the operation or application of a particular provision is to be discerned from a consideration of the Act as a whole—its language, purposes and spirit.").

A claim for benefits under the Workers' Compensation Act "is the right of the employee, at his election, to demand compensation for such injuries as result from an accident." *Biddix v. Rex Mills, Inc.*, 237 N.C. 660, 663, 75 S.E.2d 777, 780 (1953). Under the terms of the Act, an "injury" is compensable when it is: (1) by accident; (2) arising out of employment; and (3) in the course of employment. N.C.G.S. § 97-2(6) (2015); *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977).

When the employee suffers a compensable injury, "[m]edical compensation *shall be provided by the employer*." N.C.G.S. § 97-25(a) (2015) (emphasis added); *Mehaffey v. Burger King*, 367 N.C. 120, 124, 749 S.E.2d 252, 255 (2013) ("The Act places upon an employer the responsibility to furnish 'medical compensation' to an injured employee."). "Medical Compensation" includes any treatment that "may reasonably be required to effect a cure or give relief" or "tend to lessen the period of disability." N.C.G.S. § 97-2(19) (2015); *see also Little v. Penn Ventilator Co.,* 317 N.C. 206, 213, 345 S.E.2d 204, 209 (1986) ("In our judgment relief embraces not only an affirmative improvement towards an injured employee's health, but also the prevention or mitigation of further decline in that health due to the compensable injury."); *Parsons*, 126 N.C. App. at 542, 485 S.E.2d at 869 (" 'Logically implicit' in this statute is the requirement that the future medical treatment be 'directly related

to the original compensable injury.' " (quoting *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286, *disc. rev. denied*, 343 N.C. 513, 472 S.E.2d 18 (1996))). The employee's "*right to medical compensation*" continues until "two years after the employer's last payment of medical or indemnity compensation." N.C.G.S. § 97-25.1 (2015) (emphasis added). At that point, the right to medical compensation terminates, unless, before the end of that period: "(i) the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission, or (ii) the Commission on its own motion orders additional medical compensation." *Id.*

The question here concerns whether, when an injury has previously been established as compensable, a presumption arises that additional medical treatment is related to the compensable injury. While we have yet to address whether a presumption arises in the context of medical compensation, the Court of Appeals first addressed this issue in *Parsons v. Pantry, Inc.*

In *Parsons* the plaintiff was working in the defendant's store late at night when two men entered. 126 N.C. App. at 540-42, 485 S.E.2d at 868. One of the men struck the plaintiff in the forehead and shot her multiple times with a stun gun. *Id.* At a hearing before the Commission, the plaintiff met her burden of establishing that as a result of the incident she suffered compensable injuries, which consisted primarily of headaches. *Id.* at 540-42, 485 S.E.2d at 868-69. Accordingly, the Commission entered an opinion and award ordering the defendant to pay the plaintiff's medical

expenses and to provide additional treatment "which tends to effect a cure, give relief, or lessen the plaintiff's period of disability." *Id.* at 540-41, 485 S.E.2d at 868. When the plaintiff subsequently requested a hearing because of the defendant's failure to pay medical expenses, the Commission denied her any further medical treatment on the basis that she had "not introduced any evidence of causation between her injury and her headache complaints at the time of the hearing." *Id.* at 541, 485 S.E.2d at 868-69. On appeal, the Court of Appeals reversed and remanded, holding that it was error to place the burden on the plaintiff to prove causation in order to obtain additional medical treatment. *Id.* at 542-43, 485 S.E.2d at 869. The court explained that the plaintiff had met her burden at the initial hearing, and that "[t]o require plaintiff to re-prove causation each time she seeks treatment for the very injury that the Commission has previously determined to be the result of a compensable accident is unjust and violates our duty to interpret the Act in favor of injured employees." *Id.* at 542, 485 S.E.2d at 869. This presumption that additional medical treatment is directly related to the compensable injury has since become known as the "*Parsons* presumption." *See Wilkes*, ___ N.C. App. at ___, 777 S.E.2d at 286 ("Once the employee meets this initial burden, however, a presumption arises—often referred to as the *Parsons* presumption—that 'additional medical treatment is directly related to the compensable injury.'" (quoting *Perez*, 174 N.C. App. at 135, 620 S.E.2d at 292)).

The Court of Appeals has since held that the *Parsons* presumption applies both to agreements to pay compensation by means of a Form 21 ("Agreement for

Compensation for Disability") and to cases involving "direct payment" accompanied by a Form 60 ("Employer's Admission of Employee's Right to Compensation (G.S. § 97-18(b))"). *See Reinninger v. Prestige Fabricators, Inc.*, 136 N.C. App. 255, 259-60, 523 S.E.2d 720, 723-24 (1999); *see also Perez*, 174 N.C. App. at 135-37, 620 S.E.2d at 292-94. With the filing of a Form 21, the employer agrees after a workplace injury to accept the claim as compensable pursuant to N.C.G.S. §§ 97-18 and 97-82. The statutes require the employer to file a "memorandum of agreement" in the form prescribed by the Commission; once approved, that document constitutes an award of the Commission. N.C.G.S. §§ 97-82, -87(a)(2) (2015); *see also Watkins v. Cent. Motor Lines, Inc.*, 279 N.C. 132, 138, 181 S.E.2d 588, 593 (1971) ("The agreement between the parties on Form 21, approved by the Commission . . . . constituted an award by the Commission . . . ."). The statutes also permit "direct payment" by the employer, which requires no approval either from the Commission or the employee, and allows the employer to promptly initiate payments to the employee following an injury. N.C.G.S. § 97-18(b), (d) (2015); *id.* § 97-82. In 1994, the legislature enacted direct payment by amending subsection 97-18(b), adding subsection 97-18(d), and amending N.C.G.S. § 97-82(b). The Workers' Compensation Reform Act of 1994, ch. 679, secs. 3.1, 3.2, 1993 N.C. Sess. Laws (Reg. Sess. 1994) 394, 400-03. Under the current statutory framework, when the employer proceeds with direct payment, the employer can file with the Commission a Form 60 "admit[ting] the employee's right to compensation" under N.C.G.S. § 97-18(b). *See, e.g., Clark v. Wal-Mart*, 360 N.C.

41, 42, 619 S.E.2d 491, 492 (2005). In the alternative, the employer can file a Form 63 under N.C.G.S. § 97-18(d), in which the employer may initiate payments without prejudice and without admitting liability, after which the employer has ninety days to contest or accept liability for the claim. *See, e.g.*, *Johnson v. S. Tire Sales & Serv.*, 358 N.C. 701, 702, 599 S.E.2d 508, 510 (2004). Notably, N.C.G.S. § 97-82(b) provides that "[p]ayment pursuant to G.S. 97-18(b), or payment pursuant to G.S. 97-18(d) when compensability and liability are not contested prior to expiration of the period for payment without prejudice, shall constitute an award of the Commission on the question of compensability of and the insurer's liability for the injury for which payment was made."

We hold that plaintiff here is entitled to a presumption that additional medical treatment is related to his compensable conditions. This holding is consistent both with the statutory language and with cases pointing out that "compensability" and "disability" are separate issues. We have recognized that a presumption of ongoing disability arises only in limited circumstances—specifically, once the disability has been admitted or proved to the Industrial Commission. *Johnson*, 358 N.C. at 706, 599 S.E.2d at 512. This judicial construction of a presumption of ongoing disability arising based upon an "award of the Commission" dates back to at least 1951. *Tucker v. Lowdermilk*, 233 N.C. 185, 189, 63 S.E.2d 109, 112 (1951) ("However, if an award is made, payable during disability, and there is a presumption that disability lasts until the employee returns to work, there is likewise a presumption that disability

ended when the employee returned to work."); *see also Watkins*, 279 N.C. at 137, 181 S.E.2d at 592 ("If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work . . . ."). On that basis, we held that while the employer admits *compensability* by filing a Form 60, or a Form 63 when the employer fails to contest compensability within the ninety-day period, no presumption of *disability* arises in those circumstances. *Clark*, 360 N.C. at 43-46, 619 S.E.2d at 492-94; *Johnson*, 358 N.C. at 706-07, 599 S.E.2d at 512-13.

Nonetheless, on the issue of compensability in the same circumstances, we view the plain language of N.C.G.S. § 97-82(b) as dispositive. Subsection 97-82(b) provides that "[p]ayment pursuant to G.S. 97-18(b), or payment pursuant to G.S. 97-18(d) when compensability and liability are not contested prior to expiration of the period for payment without prejudice, *shall constitute an award of the Commission on the question of compensability of and the insurer's liability for the injury for which payment was made.*" (Emphasis added.) Continually placing the burden on an employee to prove that his symptoms are causally related to his admittedly compensable injury before he can receive further medical treatment "ignores this prior award." *Parsons*, 126 N.C. App. at 542, 485 S.E.2d at 869. Accordingly, we conclude that an admission of compensability approved under N.C.G.S. § 97-82(b) entitles an employee to a presumption that additional medical treatment is causally related to his compensable injury. In reaching this conclusion, we note the

mandatory language of N.C.G.S. § 97-25(a) (stating that "[m]edical compensation *shall be provided* by the employer" (emphasis added)), as well as the fact that medical compensation encompasses any treatment that "may reasonably be required to effect a cure or give relief," *Id.* § 97-2(19).

Defendant contends that the "award" under N.C.G.S. § 97-82(b) is merely an admission that the employee has suffered an accident arising out of and in the course of employment, and that the specifics of any injury must still be determined by an adjudication of the Commission. We conclude otherwise. Requiring the employee to repeatedly "build claims for medical compensation" for an admittedly compensable injury, as argued by defendant, would be inconsistent with the language of N.C.G.S. §§ 97-25, 97-2(19), and 97-82(b), as well as the purpose and spirit of the Act. We decline to adopt such a narrow interpretation of the Act.

Moreover, defendant's proposed interpretation would allow the employer, by "admitting" that the employee has suffered a compensable injury, to enjoy the right to direct the employee's medical treatment without accepting the accompanying responsibility to provide medical compensation for any treatment until the employee has proved its relatedness to the compensable injury. We have observed that, concomitant with the employer's duty under N.C.G.S. § 97-25 to provide, and the employee's right to receive, medical compensation, is the employer's right to direct the medical treatment that it furnishes. *Schofield v. Great Atl. & Pac. Tea Co.*, 299 N.C. 582, 586-87, 264 S.E.2d 56, 60 (1980); *see* N.C.G.S. § 97-25 (2015). Even before

compensability is established, when the employee claims compensation after an injury, the employer has the right to direct the employee to submit to an independent medical examination by one of its authorized physicians. N.C.G.S. § 97-27(a) (2015); *see also Kanipe v. Lane Upholstery*, 141 N.C. App. 620, 624, 540 S.E.2d 785, 788 (2000) ("One of the implicit purposes of this requirement is to enable the employer to ascertain whether the injury is work-related or not and thus whether the claim is indeed compensable."), *disc. rev. denied*, 356 N.C. 303, 570 S.E.2d 725 (2002).

Finally, defendant argues that applying the *Parsons* presumption to a Form 60 filing will discourage direct payment, upset the framework of the Act, and convert the Act into general health insurance. We are unconvinced. Applying the rebuttable presumption merely removes from the employee seeking medical treatment the burden of proving every time that such treatment is for injuries or symptoms causally related to the admittedly compensable condition. *Perez*, 174 N.C. App. at 135, 620 S.E.2d at 292. The employer may rebut this presumption with evidence that the condition or treatment is not directly related to the compensable injury. *Id.* at 135, 620 S.E.2d at 292. Defendant has not identified any marked decrease in the use of Form 60s, or any increase in related litigation and costs, since *Perez* was decided in 2004.[1]

---

[1] To the contrary, following the enactment of direct payment and our holdings in *Johnson* and *Clark*, Forms 60 and 63 have essentially replaced Forms 21 and 26. *See North Carolina Workers' Compensation Law: A Practical Guide to Success at Every Stage of a Claim* 155-56 (Valerie A. Johnson & Gina E. Cammarano eds., 3d ed. 2016) ("The use of [Form 21 and Form 26], however, has declined dramatically since the 1994 amendments to the Act.

Certainly, medical issues can be complex and the extent of an employee's injuries may be difficult to determine at the time of the accident. However, with N.C.G.S. § 97-27(a) (providing that an employee alleging a compensable injury is required to submit to a medical examination by the employer's authorized physician) and N.C.G.S. § 97-18(d) (authorizing payment without prejudice to later contest liability), the legislature has wisely given employers who are uncertain about the compensability of an employee's injuries the methods to investigate such injuries without admitting any liability under the Act while still providing prompt payments to injured employees.

In addition, the legislature has provided more recently for an expedited "medical motions" procedure, which was utilized here and can quickly be used to rebut the presumption if appropriate.[2] In 2007 the General Assembly amended N.C.G.S. § 97-78 to require the Commission to implement a plan to expeditiously resolve disputes involving medical compensation. Current Operations and Capital Improvements Appropriations Act of 2007, ch. 323, sec. 13.4A.(a), 2007 N.C. Sess. Laws 616, 787-88. And in 2013 the legislature amended N.C.G.S. § 97-25(f) to set forth such an expedited procedure. Act of July 9, 2013, ch. 294, sec. 4, 2013 N.C. Sess.

---

Employers and insurance carriers instead use a Form 60 or Form 63 procedure to admit liability for a claim and pay weekly benefits, without giving rise to any presumption of disability. Thus, the presumption of continuing disability, while it still exists, is increasingly irrelevant." (citations omitted)).

[2] Here, where plaintiff utilized these expedited procedures, the matter might well have been concluded speedily, had the presumption been properly applied.

Laws 802, 803-04. Thus, our holding on this issue is consistent with both the statutory mandate to provide treatment to the employee and with any employer's need to quickly rebut the presumption.

Here, as a result of a motor vehicle crash that occurred within the course and scope of his employment, plaintiff sustained injuries that included an abrasion on his head, three broken ribs, and injuries to his neck, back, pelvis, hip, and entire left side, as well as a concussion. Defendant filed a Form 60 accepting that plaintiff suffered compensable injuries by accident and began paying temporary total compensation and medical compensation for plaintiff's injuries. Accordingly, when plaintiff sought additional medical treatment for tinnitus, anxiety, and depression, alleging that these conditions were directly related to his compensable injuries, he was entitled to a rebuttable presumption to that effect. It is clear from the Commission's Conclusions of Law that did it not apply any presumption, and instead placed the initial burden on plaintiff to prove causation for any medical compensation he sought:

> 2. The claimant in a workers' compensation case bears the initial burden of proof, and must establish "each and every element of compensability," including a causal relationship between the injury and his employment. Based upon all credible evidence, the Full Commission concludes that Plaintiff has met his burden of showing that on 21 April 2010 he suffered compensable injuries [to] his head and ears leading to tinnitus as a result of a traffic accident arising out of the course and scope of his employment with Employer-Defendant. N.C. Gen. Stat. § 97-2(6).
>
> . . . .

> 5. . . . Based upon the preponderance of the evidence, the Full Commission concludes that Plaintiff has not met his burden of showing that his alleged depression and anxiety is a result of the 21 April 2010 work-related accident . . . .

(Citation omitted.) Because the Commission acted under a misapprehension of law, the Court of Appeals vacated the opinion and award on this issue and remanded for application of the presumption; we affirm this portion of the Court of Appeals' opinion. *See Ballenger*, 320 N.C. at 158, 357 S.E.2d at 685. We note that plaintiff was evaluated by several physicians and that the Commission found the evidence regarding plaintiff's anxiety and depression to be "conflicting." Like the Court of Appeals, "[w]e express no opinion on the question of whether the evidence of record is sufficient to rebut the presumption that Plaintiff's current complaints are directly related to his initial compensable injury." *Wilkes*, ___ N.C. App. at ___, 777 S.E.2d at 288. We leave this determination to the Commission on remand.

## II. Disability

On the issue of disability, the Court of Appeals, relying in part on *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993), held that the uncontroverted evidence establishing plaintiff's cognitive limitations adequately demonstrated that any attempt by him to find other employment would be futile, and therefore, plaintiff was entitled to total disability benefits. Defendant argues that the Court of Appeals erred in reversing the Commission's termination of

plaintiff's temporary total disability benefits. We modify and affirm that decision, and remand for further proceedings.

As we explained in *Medlin v. Weaver Cooke Construction, LLC*, "disability" is defined by the Act in N.C.G.S. § 97-2(9) as:

> "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." *Id.* §§ 97-2(9) (2013), -2(i) (1930). This definition, we have long and consistently held, specifically relates to the incapacity to earn wages, rather than only to physical infirmity. *See, e.g.*, *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 378-79 (1986); *Fleming v. K-Mart Corp.*, 312 N.C. 538, 541, 324 S.E.2d 214, 216 (1985). In *Hilliard* [*v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982)], we articulated again the three factual elements that a plaintiff must prove to support the legal conclusion of disability:
>
> ["]We are of the opinion that in order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.["]

367 N.C. 414, 420, 760 S.E.2d 732, 736 (2014). In 1993 the Court of Appeals issued its decision in *Russell*, apparently to provide examples of methods[3] by which a

---

[3] "The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment, *Peoples*, 316 N.C. at 443, 342 S.E.2d at 809; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment, *id.* at 444, [342] S.E.2d at 809; 1C Arthur Larson, *The Law of Workmen's Compensation* § 57.61(d) (1992); (3)

plaintiff could prove disability as defined above. Here we emphasize that this Court has not adopted *Russell*, and that the approaches taken therein are not the only means of proving disability. *See id.* at 422, 760 S.E.2d at 737 (stating that "*Hilliard* was grounded explicitly in the statutory definition of disability in section 97-2; *Russell expanded upon, and perhaps diverged from*, that grounding" and that the *Russell* methods "are *neither statutory nor exhaustive*" (emphases added)). In fact, the issue in *Russell* was "whether an injured employee seeking an award of total disability under N.C.G.S. § 97-29, who is *unemployed, medically able to work, and possesses no preexisting limitations which would render him unemployable*," presented sufficient evidence that he was unable to find work. *Russell*, 108 N.C. App. at 764-65, 425 S.E.2d at 456-57 (emphasis added). Here, where plaintiff has numerous preexisting limitations as found by the Commission (over the age of sixty, limited IQ of sixty-five, limited education and work experience), *Russell* is inapposite. Again, we have stated that, in determining loss of wage-earning capacity, the Commission must take into account age, education, and prior work experience as well as other preexisting and coexisting conditions. *Little v. Anson Cty. Sch. Food Serv.*, 295 N.C. 527, 532, 246 S.E.2d 743, 746 (1978). While plaintiff here bears the burden

---

the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment, *Peoples*, 316 N.C. at 444, 342 S.E.2d at 809; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury[,] *Tyndall v. Walter Kidde Co.*, 102 N.C. App. 726, 730, 403 S.E.2d 548, 550, *disc. rev. denied*, 329 N.C. 505, 407 S.E.2d 553 (1991)." *Russell*, 108 N.C. App. at 765-66, 425 S.E.2d at 457.

of proof to establish disability, once plaintiff has done so, the burden shifts to defendant "to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations." *Johnson*, 358 N.C. at 706, 708, 599 S.E.2d at 512, 513 (quoting *Burwell v. Winn-Dixie Raleigh, Inc.*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994) (emphasis omitted)).

Defendant argues that, in reversing the Commission, the Court of Appeals erroneously overruled an earlier decision of that court in *Fields v. H&E Equipment Services, LLC*, 240 N.C. App. 483, 771 S.E.2d 791 (2015). It is unclear whether defendant, in relying on *Fields*, is arguing that plaintiff was required to produce expert testimony to prove that engaging in a job search would be futile under *Russell*. *See Fields*, 240 N.C. App. at 483, 771 S.E.2d at 792 (concluding that the plaintiff did not establish futility because he "failed to provide competent evidence *through expert testimony* of his inability to find any other work as a result of his work-related injury" (emphasis added)). Because we have held that *Russell* does not apply here, this argument is misplaced; however, we have never held, and decline to do so now, that an employee is required to produce expert testimony in order to demonstrate his inability to earn wages. A plaintiff's own testimony, as well as that of his lay witnesses, can be quite competent to explain how a plaintiff's injury and any related symptoms have affected his activities. *See Kennedy v. Duke Univ. Med. Ctr.*, 101 N.C. App. 24, 31, 398 S.E.2d 677, 681 (1990) ("Testimony by the plaintiff him/herself has

also been found to be competent on the issue of wage earning capacity." (citing *Singleton v. D.T. Vance Mica Co.*, 235 N.C. 315, 325, 69 S.E.2d 707, 714 (1952))). If plaintiff shows total incapacity for work, taking into account his work-related conditions combined with the other factors noted above, he is not required to also show that a job search would be futile. *See Peoples v. Cone Mills Corp.*, 316 N.C. 426, 444, 342 S.E.2d 798, 809 (1986) ("In order to prove disability, the employee need not prove he unsuccessfully sought employment if the employee proves he is unable to obtain employment.").

We have often stated that the Commission must make specific findings that address the "crucial questions of fact upon which plaintiff's right to compensation depends." *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 451, 85 S.E.2d 596, 599 (1955); *see also, e.g., Singleton v. Durham Laundry Co.*, 213 N.C. 32, 34-35, 195 S.E. 34, 35 (1938) ("It is the duty of the Commission to make such specific and definite findings upon the evidence reported as will enable this Court to determine whether the general finding or conclusion should stand, particularly when there are material facts at issue."). Here the Commission found the evidence conflicting on whether plaintiff was actually suffering from anxiety and depression, and as a result, the Commission determined that plaintiff had failed to establish that his anxiety and depression were compensable or that they affected his ability to work, thus resulting in disability. The Commission found as fact, in relevant part that:

> 35. Testimony by Plaintiff, Plaintiff's wife, and

Doctors Lacin, Schulz, Hervey, and Gualtieri is conflicting as to whether Plaintiff is currently suffering from anxiety and depression. Based upon a preponderance of all the evidence of record, the Full Commission concludes that Plaintiff's alleged anxiety and depression was not caused by the 21 April 2010 work-related accident.

The Commission concluded as a matter of law that:

> 5. Where depression or other emotional trauma has been caused by a compensable accident and injury, and such depression or trauma has caused disability, then total disability benefits may be allowed. Here, the evidence is conflicting as to whether Plaintiff has suffered from depression and whether any depression was caused by the 21 April 2010 work-related accident. Based upon the preponderance of the evidence, the Full Commission concludes that Plaintiff has not met his burden of showing that his alleged depression and anxiety is a result of the 21 April 2010 work-related accident or *has caused him any temporary disability.*

(Emphasis added and citations omitted.)

On the other hand, the Commission found credible plaintiff's evidence that he was actually suffering from tinnitus, noting plaintiff's numerous complaints dating back to May 2010, and found that he had not reached maximum medical improvement with regard to his tinnitus at the time of the Commission's opinion and award in April 2014. The Commission specifically found:

> 26. On 27 December 2011, Plaintiff saw Dr. Debara Tucci, a board-certified otolaryngologist at Duke University Medical Center, for an evaluation. Dr. Tucci reviewed Plaintiff's previous medical records, audiograms and physically examined Plaintiff's head and ears. Dr. Tucci diagnosed Plaintiff with severe tinnitus and testified that this condition was likely caused by the accident. Dr.

Tucci further testified that the tinnitus was "wrapped up with the anxiety or depression" diagnosed in Dr. Hervey's report, which she reviewed.

27. Dr. Tucci testified that Plaintiff's tinnitus was "more likely than not" a result of the 21 April 2010 accident and was part of the "symptomatology that occurred as a result of the accident."

The Commission awarded plaintiff medical compensation for his tinnitus, including any treatment "reasonably required to effect a cure, provide relief or *lessen any disability*." (Emphasis added.) Yet, having found credible evidence of plaintiff's "severe tinnitus," the Commission made no related findings on how plaintiff's compensable tinnitus and any related symptoms may have affected his ability to engage in wage-earning activities. Accordingly, we remand this case to the Commission to take additional evidence if necessary and to make specific findings addressing plaintiff's wage-earning capacity, considering plaintiff's compensable tinnitus in the context of all the preexisting and coexisting conditions bearing upon his wage-earning capacity. *See Medlin*, 367 N.C. at 420, 760 S.E.2d at 736; *Peoples*, 316 N.C. at 441, 342 S.E.2d at 808 ("If preexisting conditions such as the employee's age, education and work experience are such that an injury causes the employee a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the actual incapacity he or she suffers, and not for the degree of disability which would be suffered by someone younger or

who possesses superior education or work experience." (citing *Little*, 295 N.C. at 532, 246 S.E.2d at 746)).

### Conclusion

In sum, we hold that the Commission erred in failing to give plaintiff the benefit of a presumption that the additional medical treatment he sought was for conditions related to his compensable injuries. The Commission will reevaluate its decision, applying the correct presumption. As the Court of Appeals correctly addressed this error, we affirm on this issue. On the issue of plaintiff's entitlement to additional disability benefits, we hold that the evidence raises factual issues regarding the effect of plaintiff's compensable tinnitus on his ability to earn wages, and that, on remand, the Commission must find these facts. Accordingly, on this second issue we modify and affirm the decision of the Court of Appeals. We remand this case to the Court of Appeals for further remand to the Commission for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; MODIFIED AND AFFIRMED IN PART, AND REMANDED.