CALABRIA, Judge.
 

 *36
 
 Dawson F. Neckles ("plaintiff") timely appealed from an opinion and award of the North Carolina Industrial Commission ("the Commission") determining that he was no longer entitled to temporary total disability benefits. On 30 December 2016, this Court filed an unpublished opinion reversing the Commission's opinion and award.
 
 See
 

 Neckles v. Harris Teeter
 
 , ---- N.C.App. ----,
 
 795 S.E.2d 289
 
 ,
 
 2016 WL 7984225
 
 (2016) (unpublished).
 

 *179
 
 Harris Teeter and its insurance carrier, Travelers Indemnity, (collectively, "defendants") subsequently filed a petition for discretionary review ("PDR") with the North Carolina Supreme Court. On 8 June 2017, the Supreme Court allowed defendants' PDR for the limited purpose of remanding the case to this Court for reconsideration in light of the Supreme Court's decision in
 
 Wilkes v. City of Greenville
 
 ,
 
 369 N.C. 730
 
 ,
 
 799 S.E.2d 838
 
 (2017),
 
 superseded on other grounds by
 

 2017 N.C. Sess. Laws 2017
 
 -124. Upon reconsideration, we reverse the Commission's opinion and award and remand for additional findings.
 

 I. Background
 

 Plaintiff was 68 years old at the time of the Commission's hearing. In 1989, plaintiff moved to the United States from Grenada. Since his arrival, plaintiff has worked for various employers as a meat cutter, and he began working in that role for Harris Teeter in 2007. According to the job description, a meat cutter is required to lift and move up to 100 pounds on a regular basis and must be able to reach from 6 to 72 inches. The position also occasionally requires climbing, balancing, stooping, kneeling, or crouching.
 

 On 30 June 2009, plaintiff injured his right hip, lower back, and right extremities while attempting to move a box of meat to the top of
 
 *37
 
 a stack. An MRI of plaintiff's lower back revealed a pars fracture or spondylolysis at L5, multilevel disc bulging, and spinal and foraminal stenosis. Defendants filed a Form 60 admitting that plaintiff had suffered a compensable injury and initiated payments of temporary total disability.
 

 On 26 January 2010, plaintiff participated in a functional capacity evaluation, which determined that he was unable to return to his job as a meat cutter but was capable of performing functions in the "light physical demand" category. On 8 February 2010, plaintiff's doctor found that he had obtained maximum medical improvement. However, plaintiff' continued to experience pain and weakness in his lower back and right leg. Over the next few years, he required further medical treatment and intermittent use of a cane in order to walk.
 

 At defendants' request, on 15 September 2011, plaintiff met with John Kobelsky ("Mr. Kobelsky"), a vocational rehabilitation specialist, to assess plaintiff's "current vocational potential." Mr. Kobelsky determined that it would be "difficult" to place plaintiff in the open job market on a full-time basis, due to factors including his work history, limited transferrable skills, age, and lack of computer knowledge. As a result, Mr. Kobelsky decided not to perform additional testing or complete a transferrable skills analysis for plaintiff.
 

 On 25 June 2014, defendants filed a Form 33 alleging that "[p]laintiff is no longer disabled" and requesting a hearing. Plaintiff responded that he remained disabled, and he sought an order compelling defendants to pay for all related medical compensation. Following a hearing, on 16 July 2015, Deputy Commissioner Bradley W. Houser entered an opinion and award determining that plaintiff was entitled to continued payment of temporary total disability benefits and all related medical expenses incurred as a result of his 30 June 2009 workplace injury. The deputy commissioner found that "[b]ased upon the preponderance of the evidence in view of the entire record, ... a job search by plaintiff ... would be futile based on his age, education, work experience, work restrictions for his compensable back injury, unrelated health conditions, and difficulty communicating." After defendants appealed, on 27 January 2016, the Full Commission entered an opinion and award reversing, in part, the deputy commissioner's decision. The Commission awarded plaintiff continued medical compensation for his injury. However, the Commission concluded that plaintiff was not entitled to temporary total disability benefits because he "failed to meet his burden of showing that it would be futile for him to look for work." Plaintiff timely appealed to this Court.
 

 *38
 
 In an unpublished opinion filed on 30 December 2016, we reversed the Commission's opinion and award. Relying heavily on our Court's decision in
 
 Wilkes v. City of Greenville
 
 ,
 
 243 N.C.App. 491
 
 ,
 
 777 S.E.2d 282
 
 (2015), we held that plaintiff had met his burden of proving disability under the so-called
 
 *180
 
 "futility method" set forth in
 
 Russell v. Lowe's Prod. Distrib'n
 
 ,
 
 108 N.C.App. 762
 
 ,
 
 425 S.E.2d 454
 
 (1993).
 
 See
 

 Neckles
 
 , ---- N.C.App. ----,
 
 795 S.E.2d 289
 
 ,
 
 2016 WL 7984225
 
 at *5 (concluding that "[p]laintiff produced ample evidence that seeking employment would be a 'meaningless exercise' because of his age; education level; communication barriers; limited vocational training and experience; chronic health conditions; and compensable workplace injury"). Defendants timely appealed by filing a PDR with the North Carolina Supreme Court. On 8 June 2017, the Court allowed defendants' PDR for the limited purpose of remanding to this Court for reconsideration of our holding in light of the Supreme Court's decision in
 
 Wilkes v. City of Greenville
 
 ,
 
 369 N.C. 730
 
 ,
 
 799 S.E.2d 838
 
 (2017),
 
 superseded on other grounds by
 

 2017 N.C. Sess. Laws 2017
 
 -124.
 

 II.
 
 Wilkes v. City of Greenville
 

 In
 
 Wilkes
 
 , the Supreme Court modified and affirmed our Court's decision on the issue of disability. Relying on
 
 Russell
 
 , our Court held that although the
 
 Wilkes
 
 plaintiff was capable of some work, he had nevertheless "demonstrated the futility of engaging in a job search" due to preexisting conditions including his age, "intellectual limitations," and limited work experience.
 
 243 N.C.App. at 503
 
 ,
 
 777 S.E.2d at 291
 
 . The Supreme Court, however, emphasized that it "has not adopted
 
 Russell
 
 " and cautioned that the case was inapposite to
 
 Wilkes
 
 , since "the issue in
 
 Russell
 
 was 'whether an injured employee seeking an award of total disability ... who is
 
 unemployed
 
 ,
 
 medically able to work
 
 ,
 
 and possesses no preexisting limitations which would render him unemployable
 
 ,' presented sufficient evidence that he was unable to find work."
 
 Wilkes
 
 ,
 
 369 N.C. at 745
 
 ,
 
 799 S.E.2d at 849
 
 (quoting
 
 Russell
 
 ,
 
 108 N.C.App. at 764-65
 
 ,
 
 425 S.E.2d at
 
 456-57 ).
 

 The Supreme Court reiterated that "in determining loss of wage-earning capacity, the Commission must take into account age, education, and prior work experience as well as other preexisting and coexisting conditions."
 

 Id.
 

 Once the plaintiff meets his burden of establishing disability, the burden shifts to the defendant "to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations."
 

 Id.
 

 (citation and quotation marks omitted). However, if the plaintiff "shows total incapacity for work, taking into account his work-related conditions
 
 *39
 
 combined with the other factors noted above, he is not required to also show that a job search would be futile."
 
 Id.
 
 at 746,
 
 799 S.E.2d at 849
 
 .
 

 Despite awarding the
 
 Wilkes
 
 plaintiff medical compensation, "the Commission made no related findings on how [his] compensable tinnitus and any related symptoms may have affected his ability to engage in wage-earning activities."
 
 Id.
 
 at 747-48,
 
 799 S.E.2d at 850
 
 . Accordingly, the Supreme Court remanded the case to the Commission with instructions "to take additional evidence if necessary and to make specific findings addressing plaintiff's wage-earning capacity, considering plaintiff's compensable tinnitus in the context of all the preexisting and coexisting conditions bearing upon his wage-earning capacity."
 
 Id.
 
 at 748,
 
 799 S.E.2d at 850
 
 .
 

 III. Reconsideration of
 
 Neckles v. Harris Teeter
 

 Upon reconsideration of our original opinion, we conclude that the Commission failed to make necessary findings regarding the effect of plaintiff's compensable injury on his ability to earn wages. The Commission awarded plaintiff continued medical compensation for his 30 June 2009 injury, finding in relevant part:
 

 27. Based on the preponderance of the evidence in view of the entire record, including the testimony of Dr. VanDerNoord, on 30 June 2009, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer resulting in a symptomatic pars fracture at L5, as well as the aggravation of pre-existing, asymptomatic degenerative disc disease of the lumbar spine. Although plaintiff appears to have undergone an MRI of his spine in 2007, plaintiff did not recall having undergone the MRI, and there is no evidence indicating why plaintiff underwent the 2007 MRI or what if any symptoms he experienced in his low back or lower extremities prior to the incident that is the subject of this claim. Furthermore,
 
 *181
 
 plaintiff was able to work in a physically demanding job with defendant-employer for approximately two years before the 30 June 2009 incident.
 

 28. The treatment plaintiff has received to date has been reasonably necessary to effect a cure and provide relief, and lessen plaintiff's period of disability. Furthermore, plaintiff is entitled to further medical treatment as is reasonably necessary [to] effect a cure, provide relief from his 30 June 2009 work-related injury.
 

 *40
 
 However, the Commission determined that plaintiff was not entitled to temporary total disability benefits after 25 June 2014, the date defendants filed their Form 33
 
 Request that Claim be Assigned for Hearing
 
 , because plaintiff failed to prove the futility of seeking employment. The Commission concluded as a matter of law that:
 

 10. In the instant case, plaintiff has failed to meet his burden of showing that he continues to be disabled as a result of his 30 June 2009 injury by accident. Neither orthopedic expert indicated that plaintiff was medically disabled from all work since he was determined by Dr. VanDerNoord to have reached [maximum medical improvement] on 8 February 2010. Plaintiff has not worked for any employer since 30 June 2009, and provided no evidence that he has sought new employment. Furthermore, vocational rehabilitation professional, Mr. Kobelsky, testified merely that it would be "difficult" to place plaintiff in a job and acknowledged that the 30 pound lifting restriction assigned by Dr. Broom would open up numerous jobs to plaintiff. ... [A] plaintiff is not required to present medical evidence or expert vocational testimony in order to meet his burden of proving that it would be futile to seek employment. In the instant case, there is expert vocational testimony that it would be "difficult," not "futile," for plaintiff to seek employment. Accordingly, the Full Commission concludes that plaintiff has failed to meet his burden of showing that it would be futile for him to look for work.
 

 (internal citations omitted).
 

 In our original opinion, we concluded that the Commission had erroneously limited its determination of futility to the portion of Mr. Kobelsky's testimony that it would be "difficult," rather than "futile," for plaintiff to find a job.
 
 Neckles
 
 , ---- N.C.App. ----,
 
 795 S.E.2d 289
 
 ,
 
 2016 WL 7984225
 
 at *4. However, in
 
 Wilkes
 
 , the Supreme Court explained that if the plaintiff "shows total incapacity for work, ...
 
 he is not required to also show that a job search would be futile
 
 ."
 
 369 N.C. at 746
 
 ,
 
 799 S.E.2d at 849
 
 (emphasis added). Rather, once the plaintiff establishes disability, the burden shifts to the defendant "to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations."
 
 Id.
 
 at 745,
 
 799 S.E.2d at 849
 
 .
 

 *41
 
 Plaintiff has numerous physical and vocational limitations, including "his work history, limited transferrable skills, age, ... lack of computer knowledge[,]" and "chronic health problems which include angina, poorly controlled diabetes, and gout[.]" As we observed in our original opinion, these limitations are documented in the Commission's findings of fact but not reflected in its ultimate determination of disability.
 
 Neckles
 
 , ---- N.C.App. ----,
 
 795 S.E.2d 289
 
 ,
 
 2016 WL 7984225
 
 at *4. However, plaintiff also experiences additional communication barriers not addressed by the Commission's findings. At the hearing, counsel had to continuously repeat questions and move closer to accommodate plaintiff's hearing difficulties, and the transcript includes frequent notations of "inaudible" or "unintelligible" throughout plaintiff's testimony, "[d]ue to the witness' heavy accent." Moreover, even assuming, as stated in Conclusion of Law #10, that the 30-pound lifting restriction ordered by plaintiff's doctors "would open up numerous jobs" to him, the Commission nevertheless failed to make any findings regarding
 
 plaintiff's ability to obtain one
 
 .
 
 See
 

 Peoples v. Cone Mills Corp.
 
 ,
 
 316 N.C. 426
 
 , 441,
 
 342 S.E.2d 798
 
 , 808 (1986) (explaining that "[i]f preexisting conditions such as the employee's age, education and work experience are such that an injury causes the employee a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the actual incapacity he or she suffers, and not for the degree of disability
 
 *182
 
 which would be suffered by someone younger or who possesses superior education or work experience").
 

 "[T]he Commission must make specific findings that address the crucial questions of fact upon which plaintiff's right to compensation depends."
 
 Wilkes
 
 ,
 
 369 N.C. at 746
 
 ,
 
 799 S.E.2d at 849
 
 (citation and quotation marks omitted). "Yet, having found credible evidence of plaintiff's [lower back injury], the Commission made no related findings on how plaintiff's compensable [lower back injury] and any related symptoms may have affected his ability to engage in wage-earning activities."
 
 Id.
 
 at 747-48,
 
 799 S.E.2d at 850
 
 . Accordingly, we reverse the opinion and award and remand "to the Commission to take additional evidence if necessary and to make specific findings addressing plaintiff's wage-earning capacity, considering plaintiff's compensable [injury] in the context of all the preexisting and coexisting conditions bearing upon his wage-earning capacity."
 
 Id.
 
 at 748,
 
 799 S.E.2d at 850
 
 .
 

 REVERSED AND REMANDED.
 

 Judges BRYANT and DILLON concur.