STROUD, Judge.
Because the Industrial Commission erred in determining plaintiff had failed to carry his burden of demonstrating the first two prongs of disability, we remand to the Industrial Commission for further proceedings.
I. Background
Beginning around June of 2011, "Plaintiff worked sporadically through [defendant], a temporary staffing agency." In June of 2013, "[p]laintiff injured his lower back ... when he was moving heavy plates with a coworker and the coworker dropped his end." The Industrial Commission described plaintiff's claim and course of evaluation and treatment as follows:
6. On or about July 9, 2013, Defendants filed an Industrial Commission Form 60, Employer's Admission of Employee's Right to Compensation, and directed Plaintiff's medical treatment to Dr. Daniel J. Albright at Raleigh Orthopaedic Clinic, P.A. Dr. Albright first examined Plaintiff on July 16, 2013, when he diagnosed Plaintiff with a lumbar strain and mild lumbar nerve irritation.
7. Dr. Albright referred Plaintiff to physical therapy and also recommended a lumbar epidural steroid injection. Dr. Albright outlined a graduated schedule within which he recommended Plaintiff return to work. On October 15, 2013, after participating in physical therapy and receiving the steroid injection, Dr. Albright placed Plaintiff at maximum medical improvement, and allowed Plaintiff to return to full duty work.
8. Defendants filed a Form 24 Application to Terminate Benefits on October 17, 2013. On November 19, 2013, Special Deputy Commissioner Michael R. Kelly allowed Defendants to terminate Plaintiff's TTD benefits. Plaintiff did not appeal the November 19, 2013 Administrative Order.
9. On December 12, 2013, Plaintiff attended a second opinion evaluation with Dr. T. Craig Derian. Physical examination of the plaintiff revealed that he was "very comfortable." Dr. Derian reported that there was no tenderness to palpation in the lumbar spine, and negative straight leg raises bilaterally. Dr. Derian also reviewed the June 18, 2013 MRI scan. At the conclusion of the evaluation, Dr. Derian diagnosed Plaintiff with a remote burst fracture at L3, associated lateral recess stenosis at L2-3 and L3-4, and a symptomatic aggravation/activation of underlying spinal stenosis. Dr. Derian opined that it appeared as though Plaintiff was at maximum medical improvement, and assigned a 5% permanent partial impairment (5% PPI) rating.
10. On February 19, 2014, Plaintiff attended an evaluation with Dr. Dina Eisinger of Triangle Orthopaedic Associates, P.A. Dr. Eisinger agreed that Plaintiff was at maximum medical improvement from a surgical perspective, and agreed with Dr. Derian's assessment that Plaintiff had a five percent permanent partial impairment (5% PPI) to his back. Dr. Eisinger suggested that Plaintiff may require further physical therapy and injections, and assigned work restrictions of no lifting, pushing, or pulling over 30 pounds.
11. On June 12, 2014, Plaintiff attended an evaluation with Dr. Gary L. Smoot of Cary Orthopaedics & Sports Medicine Center. Dr. Smoot advised that: (1) no additional physical therapy was indicated; (2) additional epidural steroid injections would not provide any further benefit; (3) a prescription for Tylenol No. 3 was provided; and (4) a Functional Capacity Examination (FCE) was ordered.
12. On June 16, 2014 and June 17, 2014 Plaintiff attended the FCE. The therapist noted that the FCE was invalid due to "inconsistencies and pattern of behavior demonstrated during the FCE," and recommended that the FCE not be utilized for the assignment of permanent work restrictions....
13. On June 26, 2014, Plaintiff attended a follow-up appointment with Dr. Smoot where it was noted that the use of the Tylenol No. 3 was effective. Dr. Smoot advised Plaintiff that he could return to full duty work, as Dr. Smoot could not assign any work restrictions based on the invalid FCE results. Dr. Smoot noted Plaintiff was not at maximum medical improvement from a pain management perspective.
14. On September 15, 2014, Plaintiff returned to Dr. Eisinger, where he was prescribed a trial of Lorzone for spasms, referred for a repeat MRI scan, and assigned work restrictions of no lifting, pushing, or pulling over 25 pounds and no repetitive bending, stooping, lifting, or twisting. On October 13, 2014, Plaintiff underwent a repeat MRI scan. According to Dr. Eisinger, the scan revealed moderate central canal stenosis secondary to retropulsion of the L3 vertebral body, moderate central canal stenosis secondary to the retropulsed L3 vertebral body at L3-4, and a small anterior annular fissure and mild bilateral neural foraminal stenosis at L4-5.
....
17. On October 22, 2014, Plaintiff attended an Independent Medical Examination with Dr. Michael Gwinn. Dr. Gwinn diagnosed Plaintiff with lumbar spinal stenosis ; mechanical low back pain, most likely related to facet arthrosis ; a remote L3 compression fracture, not related to the work accident; and probable aggravation of pre-existing degenerative changes and spinal stenosis. Dr. Gwinn opined that Plaintiff would "likely" benefit from a work conditioning program and repeat FCE, and further advised that Plaintiff was capable of medium work with no lifting over 50 pounds.
....
19. On December 8, 2014, Plaintiff attended a follow up evaluation with Dr. Gwinn. At the conclusion of the examination. Dr. Gwinn recommended that Plaintiff receive a bilateral L3 transforaminal epidural steroid injection and participate in a work conditioning program. Dr. Gwinn also prescribed Lorzone for pain. He assigned, work restrictions of no lifting more than 50 pounds, no frequent lifting or carrying of objects over 25 pounds, no frequent bending or twisting, and a 2-3 minute break every 30 minutes when sitting or standing. On January 6, 2015, Plaintiff received the epidural steroid injection.
....
21. On January 19, 2015, Plaintiff returned to Dr. Gwinn and reported that the injection did not provide any relief. Dr. Gwinn recommended that Plaintiff undergo one additional lumbar epidural steroid injection at the L4 level. On January 23, 2015, Plaintiff received the injection.
22. On January 21, 2015, Plaintiff was evaluated for work conditioning at Job Ready Services. At the conclusion of the evaluation, it was determined that Plaintiff would benefit from work conditioning "to improve his strength, improve general fitness and improve patient's confidence in his ability to return to work." ...
23. ... On January 27, 2015, Dr. Gwinn requested that Plaintiff be "excuse[d] from work while in work hardening program." The work conditioning program was scheduled for four weeks with a start date of January 21, 2015. From January 22, 2015 until February 8, 2015, Plaintiff attended work conditioning sessions. During this time, Plaintiff could not work full time and also participate in work conditioning; therefore, it was reasonable for Plaintiff to be excused from work.
....
28. On February 20, 2015, Plaintiff returned to Dr. Gwinn, who reviewed the therapists, work conditioning re-evaluation report. Dr. Gwinn determined that Plaintiff had reached maximum medical improvement and he assessed Plaintiff with a seven percent permanent partial impairment rating (7% PPI) to his back. Dr. Gwinn assigned permanent work restrictions of no lifting over 40 pounds, with frequent lifting and carrying of objects weighing up to 25 pounds, and he advised Plaintiff to return every three months for medication refills.
Plaintiff requested temporary total disability benefits and vocational assistance. In August of 2016, the North Carolina Industrial Commission entered an opinion and award and denied plaintiff's claims concluding that plaintiff had "suffered a compensable injury" but he was not entitled to "reinstatement of ongoing temporary total disability benefits from October 18, 2013 through the present and ongoing" or vocational assistance because "the evidence fails to establish that after Plaintiff was released to return to work as of October 13, 2013 that he was temporarily totally disabled." The Commission concluded, "Plaintiff has failed to produce evidence that he is incapable of work in any employment, that he performed a reasonable job search, that a job search would be futile, or that he has obtained a job for lesser wages due to his work-related injury." Plaintiff appeals.
II. Standard of Review
When reviewing an order from the Industrial Commission our Court must determine whether the findings of fact are supported by competent evidence and whether the conclusions of law are supported by findings of fact. The conclusions of law from the Industrial Commission are reviewed de novo . Under the de novo standard of review, the trial court considers the matter anew and freely substitutes its own judgment for the agency's.
Sellers v. FMC Corp. , 216 N.C. App. 134, 138, 716 S.E.2d 661, 664 (2011) (citations, quotation marks, and brackets omitted).
III. Futility
As noted by the Commission in its opinion and award, plaintiff must prove disability by demonstrating, "(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury." Hilliard v. Apex Cabinet Co. , 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). The Commission further noted that "the first two elements set out in Hillard " may be met by
(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment ; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell v. Lowes Prod. Distribution , 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (emphasis added) (citations omitted). The Commission determined that plaintiff had failed to establish any of the production burdens in Russell .
Recently, in Wilkes v. City of Greenville , our Supreme Court clarified which party has the burden at different points in the case and how the plaintiff may prove the futility prong of Russell : "While plaintiff here bears the burden of proof to establish disability, once plaintiff has done so, the burden shifts to defendant to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations." Wilkes v. City of Greenville , 369 N.C. 730, 745, 799 S.E.2d 838, 849 (2017) (citation and quotation marks omitted). When the burden shifts to the employer to show that suitable jobs are available for the employee, the employer must demonstrate the availability of jobs the employee would actually be qualified for, considering his characteristics and limitations: "Again, we have stated that, in determining loss of wage-earning capacity, the Commission must take into account age, education, and prior work experience as well as other preexisting and coexisting conditions." Id. at 745, 799 S.E.2d at 849.
Production of evidence of jobs of a sort the employee could theoretically perform does not meet the burden of proof if the particular employee is not qualified for the jobs, considering his own education and experience. See, e.g., Peoples v. Cone Mills Corp. , 316 N.C. 426, 441, 342 S.E.2d 798, 808 (1986). For example, in Peoples, our Supreme Court explained, the fact
[t]hat plaintiff can perform only sedentary work does not in itself preclude the Commission from making an award for total disability if it finds upon supporting evidence that plaintiff because of other preexisting limitations is not qualified to perform the kind of sedentary jobs that might be available in the marketplace. If preexisting conditions such as the employee's age, education and work experience are such that an injury causes the employee a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the actual incapacity he or she suffers, and not for the degree of disability which would be suffered by someone younger or who possesses superior education or work experience.
Id. at 441, 342 S.E.2d at 808.
Furthermore, although the Commission here specifically noted "Plaintiff has failed to show through expert medical or vocational evidence that it would be futile for him to seek employment[,]" the employee is not required to produce expert testimony regarding futility:
[W]e have never held, and decline to do so now, that an employee is required to produce expert testimony in order to demonstrate his inability to earn wages. A plaintiff's own testimony, as well as that of his lay witnesses, can be quite competent to explain how a plaintiff's injury and any related symptoms have affected his activities. If plaintiff shows total incapacity for work, taking into account his work-related conditions combined with the other factors noted above, he is not required to also show that a job search would be futile.
Wilkes , 369 N.C. at 746, 799 S.E.2d at 849 (citations omitted).
Here, the Commission found as fact that at the time of the hearing before the Deputy Commissioner, plaintiff was a 55-year-old man from Mexico who attended some school in Mexico but did not graduate. According to plaintiff he went to something "like high school" until the age of 12. Plaintiff can speak English, but testified that he cannot read it as well as he speaks it. Plaintiff "has worked as a construction worker, on a farm caring for pigs, and as a welder." Plaintiff's work experience can be described as manual labor, but he is now under "permanent work restrictions of no lifting over 40 pounds[.]"
Defendant contends all of plaintiff's pre-existing factors do not demonstrate futility because "Plaintiff offered no vocation or medical evidence that his pre-existing conditions would make it futile to seek employment[,]" but Wilkes has clarified that such evidence is not required. See id. Due to plaintiff's age, lack of education, lack of vocational training, limited fluency in written English, and lifting restrictions, we conclude plaintiff has met his burden of production by demonstrating "that he is capable of some work but that it would be futile because of preexisting conditions, i.e ., age, inexperience, lack of education, to seek other employment[.]" Russell , 108 N.C. App. at 765, 425 S.E.2d at 457.
Because plaintiff met his burden of production of evidence of futility by presenting evidence of his age, work experience, and lack of education, the burden shifted to defendant "to show that suitable jobs are available and that he was capable of obtaining a suitable job taking into account both physical and vocational limitations." Wilkes , 369 N.C. at 745, 799 S.E.2d at 849. Defendant presented evidence from Mr. Michael Stickney, a vocational expert, to show that suitable jobs are available to plaintiff. The opinion and award based many of its findings of fact on Mr. Stickney's testimony. "[T]he extent to which expert testimony suffices to establish a disputed fact or component of a plaintiff's claim is also subject to de novo review." Huffman v. Moore Cty. , 208 N.C. App. 471, 480, 704 S.E.2d 17, 25 (2010).
The Commission specifically found that the "expert opinion" of Mr. Stickney "shows that jobs are available consistent with Plaintiff's restrictions and his age, experience and education." The Commission found that in February of 2015, Mr. Stickney identified 11 positions that were appropriate for plaintiff, and in May of 2015 he identified 12 additional positions. The Commission did not specifically note any of the positions, but Mr. Stickney discussed them in his deposition.
Mr. Stickney's deposition shows that he had very limited knowledge of plaintiff's education and qualifications; he noted that plaintiff had worked as a welder for about nine years and in construction for two years. Mr. Stickney testified that when he was preparing the labor market surveys, he was not aware of plaintiff's education level or how well plaintiff comprehended written English or even Spanish, though Mr. Stickney agreed education and ability to read would "be relevant to a labor market survey" for plaintiff. Mr. Stickney was also unaware, though he noted it could have been relevant to his search, whether plaintiff "can operate a computer[.]" Mr. Stickney had never spoken with plaintiff before preparing the labor market surveys. As to plaintiff's physical limitations, he noted that plaintiff had a functional capacity evaluation from February of 2015 indicating plaintiff "could lift up to forty pounds from floor level with frequent tolerance for repetitive forward bending and squatting." Mr. Stickney was unaware of the educational requirements for most of the jobs he identified or if plaintiff qualified for them. For at least six of the positions he identified, the job descriptions noted a high school diploma, GED, or even an associate degree was required or preferred. Mr. Stickney was also generally unaware of any lifting requirements in the manual labor positions he had listed. Mr. Stickney's testimony as to available positions did not address plaintiff's particular status as a 55 year-old who only attended school until the age of 12, is not fluent in written English, and whose work experience is in manual labor but now has lifting restrictions. Mr. Stickney failed to identify "suitable job[s]" for plaintiff that he "is capable of performing considering, among other things, his physical limitations [.]" Id. at 499, 777 S.E.2d at 289.
To be clear, this is not an issue of Mr. Stickney's credibility but rather an issue of defendant addressing its burden with relevant evidence. To rebut plaintiff's evidence defendant's burden is "to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations ." Wilkes , 369 N.C. at 745, 799 S.E.2d at 849 (emphasis added). Mr. Stickney's testimony as to the availability of particular jobs may be credible, but it has no relevance to the employment opportunities for a person who does not have the minimum qualifications for the jobs. Mr. Stickney simply failed to identify relevant employment opportunities for a person with plaintiff's qualifications and lifting limitations, so his testimony cannot be used to determine "a disputed fact or component of ... plaintiff's claim[.]" Huffman , 208 N.C. App. at 480, 704 S.E.2d at 25. When Mr. Stickney was preparing the labor market surveys, he was simply not aware of plaintiff's relevant characteristics, including his education, fluency in written English, or computer skills, so the jobs he identified and his testimony about available positions did not address plaintiff's particular abilities as a 55 year-old who only attended school until the age of 12, is not fluent in written English, and whose work experience is in manual labor but now has lifting restrictions. We conclude the Commission erred in relying on Mr. Stickney's testimony.
Plaintiff demonstrated futility, which meets the first two prongs of disability under Hillard , see generally Russell , 108 N.C. App. at 765, 425 S.E.2d at 457, and defendant has failed to properly rebut that evidence. However, this still leaves the third prong of Hillard to determine disability. Therefore, we remand for the Commission to determine it "this individual's incapacity to earn was caused by plaintiff's injury." Hilliard , 305 N.C. at 595, 290 S.E.2d at 683. We need not address plaintiff's other contentions on appeal as we are remanding for the Commission to consider the third prong of Hillard .
IV. Conclusion
We remand for further proceedings consistent with this opinion.
REMANDED.
Report per Rule 30(e).
Judges BRYANT and DAVIS concur.