IN THE SUPREME COURT OF NORTH CAROLINA

No. 51A22

Filed 16 June 2023

DONNA SPLAWN SPROUSE, Employee,

v.

MARY B. TURNER TRUCKING COMPANY, LLC, Employer, and ACCIDENT FUND GENERAL INSURANCE COMPANY, Carrier

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 281 N.C. App. 372 (2022), reversing and remanding an opinion and award by the North Carolina Industrial Commission filed on 10 September 2019. Heard in the Supreme Court on 14 March 2023.

*Roberts Law Firm, P.A., by Scott W. Roberts and D. Brad Collins, for plaintiff-appellant.*

*Holder Padgett Littlejohn & Prickett, by Laura L. Carter, for defendant-appellees.*

*Lennon Camak & Bertics, PLLC, by Michael W. Bertics; and Jay Gervasi, P.A., by Jay A. Gervasi, Jr., for North Carolina Advocates for Justice, amicus curiae.*

MORGAN, Justice.

This appeal concerns an opinion and award issued by the North Carolina Industrial Commission (the Commission) in favor of plaintiff following a tractor-trailer accident on 24 September 2016 in which both plaintiff and her husband, who were employees of the Mary B. Turner Trucking Company, sustained injury. Immediately after the accident, plaintiff provided notice to the employer and its

insurance carrier of the accident itself and of her husband's injury, but did not report any injury to herself. On appeal, defendants challenge whether the record contained competent evidence from which the Commission could have reached its conclusions that plaintiff's own injury was causally related to the 24 September 2016 accident, that plaintiff had a reasonable excuse for not providing written notice of her own injury to defendants until 2018, that defendants were not prejudiced by plaintiff's delay in providing this written notice to them, and that plaintiff was totally disabled from 28 September 2017 until 21 April 2018 as a result of her injury. This Court recognizes that the Commission is the "sole judge of the credibility of the witnesses and weight to be given their testimony." *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433–34 (1965), and that "[t]he appellate court does not retry the facts." *Morrison v. Burlington Indus.*, 304 N.C. 1, 6 (1981). Rather, the reviewing court "merely determines from the proceedings before the Commission whether sufficient competent evidence exists to support its findings of fact." *Id.* Just as in each of these cited cases, the Commission's findings of fact in the present matter were supported by competent evidence and its conclusions of law were supported by the findings of fact. As a result, the findings of fact of this specialized agency should have been accorded proper deference and the agency's decision should not have been disturbed by the lower appellate court. Consequently, we reverse the decision of the Court of Appeals and reinstate the opinion and award filed by the Commission on 10 September 2019.

## I.    Procedural and Factual Background

Plaintiff and her husband, John Sprouse, were both employed as long-haul tractor-trailer drivers by Mary B. Turner Trucking Company (defendant-employer) in September 2016. On 24 September 2016, plaintiff was operating a tractor-trailer for defendant-employer in a westerly direction on Interstate 40 in Tennessee when the front right tire of the vehicle exploded. Consequentially, the tractor-trailer jerked to the right and crashed into an embankment on the side of the thoroughfare. Although the cab of the vehicle remained upright, the trailer which it was pulling was upended by the force of the incident. The collision thrusted plaintiff's head severely enough that her eyeglasses and headset were flung from her head. On the day of the wreck, plaintiff communicated with defendant-employer and verbally informed the company of the accident. Plaintiff's husband, who was also present in the vehicle at the time of the accident, sustained foot and shoulder injuries which were immediately reported to the Accident Fund General Insurance Company (defendant-carrier), and subsequently accepted by the insurer as compensable.

Although plaintiff was "really sore and stiff" in the immediate aftermath of the 24 September 2016 accident, she did not seek medical attention for herself right away because she was "more focused" on returning her husband to their home area in North Carolina since he did not want to be treated by a doctor in Tennessee. However, two days after the accident, plaintiff presented herself to her primary care provider Emily

Gantt, ANP-C[1] at Shelby Medical Associates upon experiencing soreness and muscle spasms. Gantt diagnosed plaintiff with low back and neck pain arising from the 24 September 2016 tractor-trailer accident in which plaintiff had been involved. The nurse practitioner prescribed an anti-inflammatory medication and muscle relaxer for plaintiff. Plaintiff had a history of neck pain, headaches, and intermittent sciatica resulting from an earlier automobile accident for which she had received treatment, but never missed significant time from work, prior to September 2016. On 13 October 2016, plaintiff returned to ANP-C Gantt and indicated to the nurse practitioner that there had been some improvement in plaintiff's condition. Between 26 January 2017 and 18 May 2017, plaintiff made three additional visits to her primary care provider Gantt concerning issues unrelated to the two vehicular accidents in which plaintiff had been involved, and plaintiff did not relate to Gantt during any of these three additional visits that plaintiff was feeling any lingering neck or back pain. However, plaintiff's condition deteriorated to a point where she had begun dragging her right foot as a result of pain emanating from her neck through her shoulders and down her right leg into her right foot. Plaintiff testified before the Commission that she had assumed at the time that this pain was not related to the tractor-trailer accident but was associated with her history of sciatica.

In January 2017, both plaintiff and her husband returned to work for defendant-employer. However, by 28 September 2017, plaintiff had developed

---

[1] Adult Nurse Practitioner—Certified.

weakness in her arms and a tingling sensation in her fingertips. She returned to see ANP-C Gantt on that date, reporting "a lot of pain in her cervical and lumbar spine." At this medical appointment, plaintiff was diagnosed with cervical pain and acute left lumbar radiculopathy, after which plaintiff was referred for an MRI[2] of her lumbar and cervical spine. Following her appointment with Gantt, plaintiff ceased working and filed for short-term and long-term disability. On 29 November 2017, plaintiff returned to the nurse practitioner Gantt and reported cervical pain and lumbar spine pain radiating into plaintiff's right buttock and down her right leg. An MRI conducted on 7 December 2017 showed that plaintiff had "moderate to severe spinal stenosis at L4-5, and mild to moderate spinal stenosis at L3-4." On 14 December 2017, after plaintiff reported that her leg had given way which had led her to fall twice since her previous visit to ANP-C Gantt, plaintiff's primary care provider referred plaintiff to Matthew J. McGirt, M.D., an expert in spinal neurosurgery who practiced at Carolina Neurosurgery & Spine Associates in Charlotte, North Carolina.

Plaintiff first presented herself to Dr. McGirt on 27 December 2017, reporting "a chief complaint of back, buttock, and radiating left leg pain." Dr. McGirt noted that plaintiff's physical examination was "very concerning for cervical myelopathy" and recommended an MRI of plaintiff's cervical spine, suspecting cervical stenosis. The spinal neurosurgeon also recommended an epidural steroid injection for plaintiff's back pain. Plaintiff's cervical MRI study, conducted on 8 January 2018, revealed

---

[2] A medical diagnostic technique known as magnetic resonance imaging.

"focal spinal cord signal abnormality," a "large central disc extrusion," and "moderate-to-severe bilateral neural foraminal stenosis" at the C5-C6 level. The diagnostic study also showed a "[l]arge left paracentral disc extrusion" and "mild right and severe left neural foraminal stenosis" at the C6-C7 level. The radiologist's interpretation stated that the "focal cord signal abnormality . . . suggest[ed] edema and/or myelomalcia." On 10 January 2018, when plaintiff returned to Dr. McGirt in order to discuss plaintiff's MRI results, the physician observed that plaintiff "definitely ha[d] myelopathy with weakness in her hands[,] numbness in her hands[,] dropping things[,] and significant gait abnormalities[,] all which progressed over the last year." Dr. McGirt recommended a two-level anterior cervical discectomy and fusion (ACDF) from C5 to C7, explaining that without this surgery, plaintiff's condition was likely to worsen due to the degree of severity to which plaintiff's spinal cord had been pinched.

On 8 February 2018, plaintiff, through counsel, filed a Form 18 Notice of Accident to Employer, indicating that she had been injured as a result of her accident on 24 September 2016. On 12 February 2018, the spinal neurosurgeon McGirt performed an ACDF on plaintiff, during which he removed "two large herniated discs which had herniated back and compressed the spinal cord" and "then rebuilt that by putting in two cages and some screws and a plate to hold that together for the two-level fusion." On 20 February 2018, plaintiff submitted a post-surgical claim for her asserted work injury to defendant-carrier. Plaintiff provided a recorded statement

and told the insurance claims adjuster, Donshe Usher of Third Coast Underwriters, that plaintiff did not report a workers' compensation injury immediately following the 24 September 2016 accident because "[she] didn't think [she] was hurt that bad" and had assumed that her claim would be "dropped" as a result of her medical history. Usher had also been the insurance claims adjuster for the insurance claim of plaintiff's husband which arose out of the 24 September 2016 accident and, when plaintiff mentioned her husband's claim during plaintiff's recorded statement, Usher stated that "if you're going to talk about your John I'm going to have to disconnect the call." The audio portion of the interview call between insurance claims adjuster Usher and plaintiff was soon disconnected, and Usher filed a Form 61 Denial of Workers' Compensation Claim on the same day.

On 17 April 2018, plaintiff returned to Dr. McGirt for a follow-up visit after Dr. McGirt's performance of plaintiff's ACDF surgical procedure. Plaintiff reported that she was "doing extremely well" at this time and was "very pleased with her early outcome." Plaintiff reported no neck pain and informed Dr. McGirt that she felt stronger. Dr. McGirt released plaintiff "to return to work without restrictions the next week." On 21 April 2018, approximately two months after her surgery, plaintiff returned to work with defendant-employer. Plaintiff was last treated at Carolina Neurosurgery & Spine Associates on 11 July 2018 for her final post-operative follow-up visit and was discharged to consult with a physiatrist for an evaluation of her "left lower extremity radiculopathy" and "left hand numbness."

On 22 May 2019, Deputy Industrial Commissioner A.W. Bruce filed an opinion and award in favor of plaintiff after reviewing plaintiff's claim. Defendants appealed. After hearing the parties' arguments on 15 October 2019, the Full Commission entered an opinion and award affirming Deputy Commissioner Bruce's decision for plaintiff based on the record of the proceedings before Deputy Commissioner Bruce. The record included the deposition transcripts of both Dr. McGirt and the ANP-C Gantt, the Form 44 Application for Review, and the briefs and arguments of the parties. Among its findings of fact, the Industrial Commission included the following:

> 21. At his deposition, Dr. McGirt testified that the symptoms documented in Plaintiff's medical records prior to September 24, 2016, were different from the neurological dysfunction and loss of function (i.e. "weaknesses and numbness") for which he treated Plaintiff. Dr. McGirt further opined that it was more likely than not that the September 24, 2016 tractor trailer wreck caused the two levels of herniated discs in Plaintiff's spine and that the herniations necessitated the surgery he performed. Dr. McGirt also testified Plaintiff would have been unable to work from September 28, 2017, when Plaintiff began experiencing numbness and weakness. Dr. McGirt released Plaintiff to return to work without restrictions following her April 17, 2018 appointment.

> 22. According to Dr. McGirt, Plaintiff was "pretty tough because . . . she had some pretty darn significant weakness that she was not coming in and screaming nor did we have a long drawn out workers [sic] comp conversation nor a causation conversation." Dr. McGirt further testified that "she didn't realize that she had a spinal cord issue" and that such a delay in symptoms is not "out of the realm of what we typically see in spinal cord compression."

> 23. Based upon the preponderance of the evidence in

view of the entire record, the Full Commission finds that Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer when she was injured in the wreck of September 24, 2016. The Full Commission further finds that Defendant-Employer had actual notice of Plaintiff's September 24, 2016 injury by accident on or about September 24, 2016, when Plaintiff reported the wreck to the Defendant-Employer, and that Plaintiff had a reasonable excuse for the delay in providing written notice of her accident to Defendant-Employer as she did not reasonably know of the nature or seriousness of her injury immediately following the accident. The Full Commission further finds that Defendants failed to show they were prejudiced by any delay in the notice of Plaintiff's accident.

24. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds the medical treatment Plaintiff received from Dr. McGirt was reasonable and necessary to effect a cure, give relief, and lessen the period of disability from the cervical spine injury Plaintiff sustained on September 24, 2016.

25. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiff was unable to work from September 28, 2017 until April 21, 2018, the date she returned to work for Defendants.

From its findings of fact, the Commission made, *inter alia*, the following conclusions

of law:

2. . . . [T]he greater weight of the credible evidence establishes that Plaintiff's cervical spine injury was caused by Plaintiff's September 24, 2016 work accident. N.C. Gen. Stat. § 97-2(6) (2019).

. . . .

4. . . . Plaintiff had a reasonable excuse for not providing written notice within 30 days because Plaintiff

communicated with her employer on the date of the accident and because she did not reasonably know of the nature or seriousness of her injury immediately following the accident. . . .

5. . . . Defendants have failed to show prejudice resulting from the delay in receiving written notice because Defendant-Employer had actual, immediate notice of Plaintiff's accident on the day of the accident. The actual notice provided to Defendant-Employer allowed ample opportunity to investigate Plaintiff's condition following the violent truck accident and direct Plaintiff's medical care. Thus, Defendants were not prejudiced by the delay in receiving written notice. Because Plaintiff has shown a "reasonable excuse" for not providing written notice of her accident to Defendants within 30 days, and because the evidence of record fails to show Defendants were prejudiced by not receiving written notice within 30 days, Plaintiff's claim is not barred pursuant to N.C. Gen. Stat. § 97-22 (2019).

6. . . . Dr. McGirt opined that Plaintiff was unable to work from September 27, 2017 to April 20, 2018, which prevented her from working in her job as a long-haul tractor trailer driver or any other employment. Plaintiff was temporarily totally disabled from September 28, 2017 until April 21, 2018.

Based upon the abovementioned findings of fact and conclusions of law, along with the Commission's other findings and conclusions, and the parties' stipulations, the Commission approved plaintiff's claim and issued an award in her favor. Defendants filed a timely notice of appeal.

In an opinion filed on 18 January 2022, *Sprouse v. Turner Trucking Co.*, 281 N.C. App. 372 (2022), a divided panel of the Court of Appeals reversed and remanded the Commission's opinion and award on the grounds that: (1) the Commission's

conclusion of law that plaintiff's condition was causally related to the 24 September 2016 accident was unsupported by the Commission's findings of fact; (2) plaintiff had failed to provide a reasonable excuse for failing to timely notify defendants of her injury and also failed to demonstrate that defendants were not prejudiced by plaintiff's delay in reporting her injury; and (3) undisputed facts showed that plaintiff was only disabled from 10 January 2018 to 21 April 2018. *Id.* at 381. In the dissenting judge's view, the majority misapplied the applicable standard of review and improperly reweighed the evidence in favor of defendants in order to reach its decision. *Id.* at 382 (Jackson, J., dissenting). Plaintiff filed a timely notice of appeal to this Court pursuant to North Carolina General Statute § 7A-30(2) on the basis of the dissent.

## II.    Analysis

The issues before this Court on appeal are whether, in determining plaintiff's claim, the Commission erred by concluding that: (1) plaintiff's condition was causally related to the 2016 accident; (2) plaintiff had a reasonable excuse for her delay in providing written notice to defendants of her injury which resulted from the 24 September 2016 accident and this delayed notice did not prejudice defendants; and (3) plaintiff was disabled from 28 September 2017 until 21 April 2018.

The North Carolina Industrial Commission is the fact-finding body under the Workers' Compensation Act. *See, e.g., Brewer v. Powers Trucking Co.*, 256 N.C. 175, 182 (1962). As the finder of fact, the Commission "is the sole judge of the credibility

of the witnesses and the weight to be given their testimony." *Anderson,* 265 N.C. at 433–34. An appellate court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains *any* evidence tending to support the finding." *Id.* at 434 (emphasis added); *see also* N.C.G.S. § 97-86 (2021) ("The award of the Industrial Commission . . . shall be conclusive and binding as to all questions of fact. . . ."). In this regard, the state appellate courts are limited when reviewing opinions and awards issued by the Commission to determinations of: (1) whether the Commission's findings of fact are supported by competent evidence, and (2) whether the Commission's conclusions of law are justified by its findings of fact. *See, e.g., Clark v. Wal-Mart,* 360 N.C. 41, 43 (2005). Finally, "[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Deese v. Champion Int'l Corp.,* 352 N.C. 109, 115 (2000) (quoting *Adams v. AVX Corp.,* 349 N.C. 676, 681 (1998)).

At each stage of its analysis in the present case, the Court of Appeals majority significantly departed from these well-established principles of appellate review by making its own credibility determinations, viewing the evidence in a light which was not most favorable to plaintiff, and usurping the Commission's role as factfinder in this workers' compensation matter. Conversely, in applying here the standards governing appellate review which this Court has routinely recognized and utilized,

we determine that the Commission's findings of fact were supported by competent evidence and that these findings, in turn, justified the agency's conclusions of law. As an appellate court, our duty goes no further. *See, e.g., Cunningham v. Goodyear Tire & Rubber Co.*, 381 N.C. 10, 16 (2022). As a result, we reverse the lower appellate court's determinations of error and fully reinstate the Commission's opinion and award.

### a. Causal Relation

Under the Workers' Compensation Act, "an 'injury' is compensable when it is (1) by accident, (2) arising out of employment, and (3) in the course of employment." *Wilkes v. City of Greenville*, 369 N.C. 730, 737 (2017) (citing N.C.G.S. § 97-2(6) (2015)). The claimant in a workers' compensation case bears the burden of initially proving each element of compensability, including a causal relationship between her injury and a work-related incident. *Whitfield v. Lab'y Corp. of Am.*, 158 N.C. App. 341, 350 (2003). To establish sufficient causation when complicated medical questions are involved, expert testimony that meets "the reasonable degree of medical certainty standard necessary to establish a causal link" must be presented. *Holley v. ACTS, Inc.*, 357 N.C. 228, 234 (2003). This evidence "must be such as to take the case out of the realm of conjecture and remote possibility." *Gilmore v. Hoke Cnty. Bd. of Educ.*, 222 N.C. 358, 365 (1942). Furthermore, "where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent

opinion evidence as to the cause of the injury." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167 (1980). Nonetheless, because the Commission "is the sole judge of the credibility of the witnesses and the weight to be given to their testimony," it may "accept or reject the testimony of a witness solely on the basis of whether it believes the witness or not." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595 (1982).

In the instant case, the Commission concluded that plaintiff's injury—specifically, the compression of her spinal cord as the result of two large disc herniations—resulted from the 24 September 2016 accident on the basis of spinal neurosurgeon McGirt's testimony that it would "take a pretty good force" to produce such an injury and that this accident was the "most sizable injury" in plaintiff's recent history. Consequently, the medical doctor rendered his conclusion that it was "more likely than not that [the 24 September 2016 accident] caused and contributed to some degree to that cervical disease." Dr. McGirt also concluded, to a reasonable degree of medical certainty, that the 24 September 2016 accident was a proximate cause in plaintiff's development of the two herniated discs in her cervical spine and that the crash was one of the reasons, or a proximate cause, necessitating surgical intervention. In response to cross-examination by defense counsel, Dr. McGirt specifically testified that plaintiff's history of back, neck, and limb pain did not influence his expert opinion on the cause of plaintiff's injury at issue because "pain syndrome [is] very different than what [Dr. McGirt] was treating which was neurological dysfunction and loss of function." Finally, the spinal neurosurgeon

testified that this type of spinal cord injury often takes one to two years to become symptomatic. Although ANP-C Gantt also testified in this workers' compensation case, Dr. McGirt was the only witness who was tendered as a medical expert in this matter.

Because the testimony of the spinal neurosurgeon McGirt was the only expert testimony presented regarding the areas which we identified in *Click* as "the exact nature and probable genesis" of plaintiff's injury which "involves complicated medical questions," then Dr. McGirt's testimony obviously constituted the only "competent opinion evidence as to the cause of the injury." 300 N.C. at 167. This sole expert testimony, which included the only competent opinion evidence from an expert here, directly supported the Commission's Finding of Fact 23 that plaintiff's injury arose out of and in the course of her employment with defendant-employer as a result of the accident which occurred on 24 September 2016. In turn, this finding supported the Commission's conclusion of law that "the greater weight of the credible evidence establishes that Plaintiff's cervical spine injury was caused by Plaintiff's September 24, 2016 work accident." Because *some* competent evidence—indeed, the *only* competent opinion evidence provided at plaintiff's hearing on the issue of causation—supported the Commission's findings, the Court of Appeals was constrained to affirm the agency's determinations on this factual issue. *See Anderson,* 265 N.C. at 434.

Instead, the lower appellate court decided that uncontested facts presented to the Commission established that plaintiff's "chronic medical conditions" existed prior

to the 24 September 2016 accident and that the Commission therefore erred by concluding that plaintiff's injury was causally related to her work accident. *Sprouse*, 281 N.C. App. at 379. The Court of Appeals reached this outcome primarily based on the documented history of plaintiff's intermittent sciatica addressed in her medical records to which both parties stipulated. *Id.* at 378–79. However, a claimant's medical history, even though it may contain relevant diagnoses that predate the claimant's work-related incident, is not dispositive of whether a particular injury—in this case, plaintiff's two herniated discs and the resulting compression to her spinal cord—may be causally related to a workplace accident. A claimant's pre-existing medical condition cannot properly be deemed to constitute a complete bar to a successful workers' compensation claim when a plaintiff provides evidence to support the Commission's conclusion that a work-related accident has caused a new injury that aggravated or accelerated the individual's pre-existing condition. *See Anderson v. Nw. Motor Co.*, 233 N.C. 372, 374 (1951); *Morrison*, 304 N.C. at 18.

The appellate courts may not abandon the Commission's factual determinations when such determinations are supported by any competent evidence. *Anderson v. Lincoln Constr.,* 265 N.C. at 434; *see* N.C.G.S. § 97-86 (2021). Consistent with our pronouncement in *Brewer*, the lower appellate court was not at liberty here to reweigh the evidence in the record by placing primary emphasis on plaintiff's pre-existing intermittent sciatica or any other matters in her medical history where there was "any evidence tending to support the [agency's] finding." *Anderson*, 265 N.C. at

434. Here, spinal neurosurgeon McGirt, as the only expert witness in this case, supplied testimony which constituted evidence tending to support the Commission's finding that plaintiff's injury was causally related to her 24 September 2016 accident. Therefore, the Commission's Finding of Fact 23 was appropriately entered and the Commission's determination of medical causation in favor of plaintiff was properly reached.

### b. Timely Notice

Under section 97-22, an injured worker is required to give written notice of an accident to her employer within thirty days of the accident's occurrence or she may be barred from receiving compensation under the North Carolina Workers' Compensation Act. N.C.G.S. § 97-22 (2021). However, this statutory requirement may be waived if the Industrial Commission is satisfied that (1) the plaintiff had a reasonable excuse for not giving such notice, and (2) the employer was not prejudiced thereby. *Id.* A claimant is required to substantiate a reasonable excuse for her failure to comply with the statutory notice requirements. *Jones v. Lowe's Cos.*, 103 N.C. App. 73, 75 (1991). Furthermore, "[s]ection 97-22 gives the Industrial Commission the discretion to determine what is or is not a 'reasonable excuse.' " *Chavis v. TLC Home Health Care*, 172 N.C. App. 366, 377 (2005) (quoting N.C.G.S. § 97-22 ("[U]nless reasonable excuse is made to the satisfaction of the Industrial Commission . . ." (alterations in original) (emphasis omitted))), *app. dismissed*, 360 N.C. 288 (2006). The Court of Appeals has cogently defined "reasonable excuse" to "include a belief

that one's employer is already cognizant of the accident" as well as to encompass situations "where the employee does not reasonably know of the nature, seriousness, or probable compensable character of his injury and delays notification only until he reasonably knows." *Jones*, 103 N.C. App. at 75 (extraneity omitted); *see also Lawton v. County of Durham*, 85 N.C. App. 589, 592–93 (1987).

In the present case, the Commission found both that (1) defendant-employer had actual notice of the 24 September 2016 accident because plaintiff verbally reported the wreck to defendant-employer on the date of the accident and (2) plaintiff had a reasonable excuse for the delay in providing written notice to defendant-employer because she did not reasonably know of the nature or seriousness of her injury immediately following the accident. As a result, the Commission concluded that plaintiff had a reasonable excuse for not providing written notice of the accident to defendant-employer within thirty days of the accident's occurrence because she had "communicated with her employer on the date of the accident and because she did not reasonably know of the nature or seriousness of her injury immediately following the accident." It is noteworthy that the Commission's finding that plaintiff had communicated with defendant-employer on the date of the accident to inform the trucking company of the crash was not challenged on appeal and is therefore binding upon our appellate review. In addition, the Commission's finding that plaintiff lacked reasonable knowledge of the nature and seriousness of her resulting injury was supported by competent evidence because the spinal neurosurgeon McGirt testified

that plaintiff "didn't realize that she had a spinal cord issue" at her previous appointments and because plaintiff told defendant-carrier that she did not believe that she "was hurt that bad" immediately following the accident. Because this finding by the Commission was supported by competent evidence, it is likewise binding upon our appellate review. These findings of fact adequately supported the Commission's conclusion of law that plaintiff had established reasonable excuse for her failure to provide timely written notice of the accident in accordance with N.C.G.S. § 97-22.

Even where a worker can show such reasonable excuse, nonetheless her claim will still be barred if her employer can show that it was prejudiced by the lack of written notice provided within the statutory time period. *Yingling v. Bank of Am.*, 225 N.C. App. 820, 832 (2013). While N.C.G.S. § 97-22 itself does not specify which party in a workers' compensation action bears the burden of proof in establishing whether a defendant-employer was prejudiced by a plaintiff claimant's failure to comply with this statutory written notice requirement, the Court of Appeals has heretofore plausibly opined that the defendant-employer bears the burden of showing prejudice once a claimant has satisfactorily provided a reasonable excuse for her failure to provide written notice of the accident in which she was injured to the defendant-employer within thirty days of the accident's occurrence. *See, e.g.*, *Yingling*, 225 N.C. App. at 832; *Chavis*, 172 N.C. App. at 378; *Lakey v. U.S. Airways, Inc.*, 155 N.C. App. 169, 172–73 (2002), *disc. rev. denied*, 357 N.C. 251 (2003); *Peagler*

*v. Tyson Foods, Inc.*, 138 N.C. App. 593, 604 (2000).[3] Because the purpose of the statutory written notice requirement is two-fold—to allow the employer to "provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury" as well as to "facilitate[ ] the earliest possible investigation of the circumstances surrounding the injury"—an employer may show that it was prejudiced either by proving that the employer was denied the ability to direct a plaintiff's appropriate medical care or that the employer was unable to investigate the circumstances surrounding the plaintiff's injury. *Booker v. Duke Med. Ctr.*, 297 N.C. 458, 481 (1979).[4]

The Commission's conclusion in the instant case that defendant-employer was not prejudiced by plaintiff's failure to comply with the statutory written notice requirement is supported by the agency's findings which we deem to be consistent with our stated view in this area of law. The purposes of the notice requirement have been determined to be vindicated despite lack of timely written notice when a plaintiff received appropriate medical care and the defendant-employer "had immediate,

---

[3] This assignment of the burden of proof conforms to N.C.G.S. § 97-23, which expressly assigns the burden of proving prejudice to employer-defendants on the issue of inadequate or defective notice. N.C.G.S. § 97-23 (2021) ("No defect or inaccuracy in the notice shall be a bar to compensation unless the employer shall prove that his interest was prejudiced thereby. . . ."); *see also Gregory v. W.A. Brown & Sons*, 363 N.C. 750, 757 (2010) (discussing section 97-23).

[4] We disavow any indication by the Court of Appeals that an injured worker's failure to provide written notice to the defendant-employer for a period of at least 471 days is per se prejudicial and does not require the presentation of any additional evidence in order to show whether the defendant-employer was actually prejudiced by the failure to provide written notice within the thirty-day statutory time period.

actual knowledge of the accident and failed to further investigate the circumstances surrounding the accident at that time." *Yingling*, 225 N.C. App. at 834 (citation omitted); *see also Gregory v. W.A. Brown & Sons*, 363 N.C. 750, 759–62 (2010) (contemplating that "[f]indings of fact to the effect that [the] purposes of the notice requirement were vindicated despite the lack of timely written notice of an employee's accident could . . . support a legal conclusion that the employer was not prejudiced by the delay in written notice."). In keeping with our quoted observation in *Gregory* while approvingly referencing *Yingling*, we hold in the current case that the dual purposes of the notice requirement were vindicated despite the lack of timely written notice because: (1) plaintiff provided defendant-employer with actual notice of the 24 September 2016 accident on the same day that the accident occurred, (2) defendants failed to further investigate the circumstances surrounding the accident at the time, (3) plaintiff received proper and appropriate medical care for her injury which considerably improved her condition, and (4) defendants failed to show that they were otherwise prejudiced by any delay in receiving written notice of plaintiff's injury.

First, the Commission in this case found as fact that defendant-employer had received actual notice from plaintiff of the 24 September 2016 accident on the date of the wreck. This finding of fact was not challenged on appeal and is therefore binding on review. From its findings, the Commission concluded that defendants were not prejudiced by the lack of timely written notice because actual notice allowed ample opportunity for defendants to investigate plaintiff's condition following the accident

and to direct plaintiff's medical treatment. Furthermore, defendants did not present any evidence which tended to suggest that they were unable to investigate the 24 September 2016 accident, the crash's attendant circumstances, or plaintiff's condition following the accident. Of course, given that defendants were able to sufficiently investigate the accident in order to satisfactorily conclude that the claim submitted by plaintiff's husband was compensable, then it is unassailable that a recognized purpose of the notice requirement—namely, that defendants be provided with a reasonable opportunity to investigate the circumstances of a work accident from which an employee's injury was alleged to have resulted—was vindicated in this case despite the lack of receipt of statutory written notice of plaintiff's injury.

Second, there was no evidence presented which tended to demonstrate that defendants were prejudiced due to lack of timely written notice of plaintiff's injury which resulted in defendants' inability to direct plaintiff's prompt and proper medical treatment. Defendants contend that the spinal neurosurgeon McGirt forced a course of treatment that may not have been required if plaintiff had received adequate medical treatment from the date of her injury. Although defendants claim that plaintiff's injury was either exacerbated by some delay in her medical treatment or that plaintiff was provided improper or inappropriate medical care which may have worsened her condition, thereby necessitating Dr. McGirt's surgical intervention at a later date, defendants did not offer any evidence to support these contentions. Defendants produced no expert testimony to support their assertions either that

plaintiff's course of treatment would have been different, or that surgical intervention could have been avoided in the event that plaintiff had supplied written notice of her injury to them within the prescribed statutory time period. Similarly, defendants presented no expert testimony to support their assertion that Dr. McGirt's surgical intervention may not have been required at all to treat plaintiff's condition. These unsupported assertions pale in the face of the Commission's finding, grounded in competent evidence which was offered in the form of spinal neurosurgeon McGirt's own testimony, that "the medical treatment Plaintiff received from Dr. McGirt was reasonable and necessary to effect a cure, give relief, and lessen the period of disability from the cervical spine injury Plaintiff sustained on September 24, 2016."

Finally, even if defendants were able to demonstrate that they could have facilitated superior medical intervention which might have diagnosed, treated, or otherwise minimized plaintiff's injury in the event that they had been provided timely written notice as established in N.C.G.S. § 97-22, we are not persuaded that defendants could demonstrate, under the particular facts of the present case, that any right to direct plaintiff's appropriate medical care was denied to them given the fact that defendants refused to accept plaintiff's claim as compensable upon the presentation of the claim. Generally speaking, employers do not have a right to direct medical care for denied claims. *Lauziere v. Stanley Martin Cmtys., LLC*, 271 N.C. App. 220, 224 (2020) ("[W]e have 'long held that the right to direct medical treatment is triggered only when the employer has accepted the claim as compensable.' "

(quoting *Yingling*, 225 N.C. App. at 838)), *aff'd per curiam*, 376 N.C. 789 (2021); *see also Kanipe v. Lane Upholstery*, 141 N.C. App. 620, 624 (2000) ("[U]ntil the employer accepts the obligations of its duty, i.e., paying for medical treatment, it should not enjoy the benefits of its right, i.e., directing how that treatment is to be carried out."). Here, defendants denied plaintiff's claim on the grounds, *inter alia*, that her injury was not causally related to the 24 September 2016 accident. Defendants continue to challenge the issue of medical causation before this Court on appeal. Based on this stance, defendants would not have had any right to direct plaintiff's medical care after the 24 September 2016 accident, regardless of whether they had been provided statutory written notice of plaintiff's injury.[5] For these reasons, we hold that the Commission properly found that defendants failed to show any prejudice as the result of plaintiff's failure to provide written notice of her injury within the thirty-day statutory time period.

### c. Date of Disability

Under the North Carolina Workers' Compensation Act, disability is defined as "incapacity because of injury to earn the wages which the employee was receiving at

---

[5] We do not presume to conclude that there is absolutely no factual scenario in which a defendant to a workers' compensation case may be able to offer evidence tending to demonstrate that a worker received entirely inappropriate or inadequate medical care which aggravated her damages in order to limit its own liability for a worker's injury despite the defendant's failure to accept the worker's injury as compensable in the first instance. We merely apply to this case the general principle that defendants lack the right to direct the course of medical treatment for injuries which they deny as non-compensable and therefore cannot, under such circumstances, prove prejudice on the sole grounds that they may have directed a different course of treatment.

the time of injury in the same or any other employment." N.C.G.S. § 97-2(9) (2021).

"In workers' compensation cases, a claimant ordinarily has the burden of proving both

the existence of his disability and its degree." *Hilliard*, 305 N.C. at 595. In order to

conclude that a plaintiff is or was disabled, the Industrial Commission must find:

> (1) that plaintiff was incapable after his injury of earning
> the same wages he had earned before his injury in the same
> employment, (2) that plaintiff was incapable after his
> injury of earning the same wages he had earned before his
> injury in any other employment, and (3) that this
> individual's incapacity to earn was caused by plaintiff's
> injury.

*Id.* (citation omitted). In the present case, the Court of Appeals held that the

Commission had erred by concluding that plaintiff was temporarily totally disabled

from 28 September 2017 to 21 April 2018 because it wasn't until 10 January 2018

that Dr. McGirt recommended that plaintiff stop work due to her condition. *Sprouse*,

281 N.C. App. at 381. Once again, the lower appellate court reached its conclusion on

this issue by abandoning the applicable standard of review and making its own

factual determinations instead of merely considering whether the Commission's

findings of fact were supported by competent evidence and whether those findings, in

turn, supported the Commission's conclusion of law that plaintiff's total disability

began on 28 September 2017.

We affirm the Commission's sixth conclusion of law that plaintiff was

temporarily totally disabled starting on 28 September 2017 because this conclusion

was justified by Finding of Fact 21 that plaintiff would have been unable to work as

of 28 September 2017 when she began to experience numbness and weakness in her extremities. Finding of Fact 21 was drawn from spinal neurosurgeon McGirt's testimony that plaintiff should not have been working upon the onset of these symptoms. Specifically, Dr. McGirt testified that plaintiff's disability began on 28 September 2017, when plaintiff noted significant pain in her cervical and lumbar spine which radiated into her neck and arms, created tingling in her fingers, and caused weakness in her arms. At this point, Dr. McGirt rendered his expert testimony that "she should not have been working" and that "[a]ny patient who has that degree of spinal cord compression should not be working." The spinal neurosurgeon further testified that "the standard of care in neurosurgery or orthopedic spine surgery is somebody with severe cervical stenosis from disc herniations should not be allowed to drive those cars or professionally go back to work until they're fixed." Lastly, Dr. McGirt was able to conclude to a reasonable degree of medical certainty that these herniations had occurred during the 24 September 2016 accident, although the onset of plaintiff's disabling symptoms manifested approximately one year later. Although plaintiff was not formally diagnosed with cervical stenosis and removed from work by Dr. McGirt until 10 January 2018, it was the spinal neurosurgeon's expert opinion that plaintiff was unable to work at the onset of her symptoms in September 2017. This evidence was competent to support the Commission's finding of fact that plaintiff was unable to work beginning on 28 September 2017 which, in turn, justified its conclusion of law that plaintiff's temporary total disability also began on 28

September 2017.

### III.    Conclusion

Upon the application of the proper standard of review, we determine that the Industrial Commission did not err in its issuance of an opinion and award in favor of plaintiff in this matter. The agency's findings of fact were supported by ample competent evidence and, in turn, its conclusions of law were supported by the findings of fact. Accordingly, we reverse the decision of the Court of Appeals and direct that court to fully reinstate the Commission's opinion and award.

REVERSED.