IN THE SUPREME COURT OF NORTH CAROLINA

No. 173PA22

Filed 22 March 2024

ROBIN KLUTTZ-ELLISON, Employee

v.

NOAH'S PLAYLOFT PRESCHOOL, Employer, and ERIE INSURANCE GROUP, Carrier

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 283 N.C. App. 198 (2022), affirming an opinion and award entered on 11 March 2021 by the North Carolina Industrial Commission. Heard in the Supreme Court on 20 September 2023.

*Shelby, Pethel and Hudson, P.A., by David A. Shelby, for plaintiff-appellee.*

*Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones and Lindsay N. Wikle, for defendant-appellants.*

DIETZ, Justice.

Under our workers' compensation statutes, an employee who suffers a compensable injury in a workplace accident may receive compensation for any medical treatment that "may reasonably be required to effect a cure or give relief." N.C.G.S. § 97-2(19) (2023); *see also id.* § 97-25(c).

Despite this broad language, the Court of Appeals has long held (quite understandably) that this provision does not apply to *every* medical treatment; it applies only to those treatments that are "directly related" to the workplace injury.

Were it otherwise, workers' compensation would too easily transform into general health insurance, forcing employers to cover treatments for medical conditions with no connection to the workplace injury.

To assess whether a treatment is directly related, the Court of Appeals examines the strength of the "causal relationship" between the condition that requires treatment and the workplace injury. *See, e.g., Perez v. Am. Airlines/AMR Corp.*, 174 N.C. App. 128, 133 (2005). This approach, which this Court has favorably recognized but never formally endorsed, protects the need for causality in assessing workers' compensation—a need that is "the very sheet anchor" of the system. *Duncan v. City of Charlotte*, 234 N.C. 86, 91 (1951).

As explained in more detail below, we endorse the test as it has developed in the Court of Appeals. Under the "directly related" test, treatment for a medical condition is directly related to a workplace injury, and therefore compensable, if there is a sufficiently strong causal relationship between the condition that requires treatment and the workplace injury. *Perez*, 174 N.C. App. at 133. This requires a showing that the condition for which treatment is sought (1) was caused by the workplace injury; (2) was aggravated by the workplace injury; or (3) did not require medical treatment or intervention of any kind before the workplace injury but now requires treatment solely to remedy the workplace injury.

If any of these criteria are met, the treatment is directly related to the workplace injury and is compensable. If not, the treatment is, at most, indirectly

related to the workplace injury and is not compensable under the workers' compensation system.

Our holding today is largely a restatement of longstanding Court of Appeals precedent. Nevertheless, we find it necessary to reverse the Court of Appeals' decision and remand with instructions to further remand this case to the Industrial Commission. As explained in more detail below, neither the Commission nor the Court of Appeals properly applied the test set out in this existing line of Court of Appeals cases, which we have now formally endorsed. We therefore reverse and remand this matter so that the Commission can apply the test set out in this opinion.

## Facts and Procedural History

Plaintiff Robin Kluttz-Ellison worked at Noah's Playloft Preschool. Plaintiff brought two workers' compensation claims against defendants (her employer and workers' compensation carrier) for injuries sustained in two different workplace accidents. The first accident occurred when plaintiff fell several feet off a ladder while changing a lightbulb. The second incident occurred when plaintiff tripped on a child's sleeping cot and fell.

Defendants denied a number of plaintiff's claims, asserting that the alleged injuries were unrelated to the workplace accidents. The Commission ultimately consolidated plaintiff's claims for a single hearing.

Before these accidents, plaintiff had a medical procedure known as knee arthroplasty, which required a prosthetic secured with hardware to be placed in her

right knee. In addition, plaintiff had struggled with body weight issues for many years. Her medical care providers previously diagnosed her with obesity and recommended treatments ranging from changes to her diet to prescription weight-loss medications.

After the workplace accidents, plaintiff's care providers determined that she needed additional knee surgery to address a loosening of the hardware in her right knee. They also recommended that plaintiff undergo a form of bariatric weight loss surgery known as gastric bypass. Plaintiff's care providers believed this weight loss surgery was necessary because they could not safely perform the required knee surgery until plaintiff's body mass index was lowered significantly. These care providers concluded that bariatric surgery was the only available treatment that would lead to a sufficiently rapid loss of body weight.

Following a hearing, the deputy commissioner denied plaintiff's claim with respect to the loosened hardware in her right knee. As a result, the deputy commissioner also denied the claim for bariatric weight loss surgery, which was based on the compensability of plaintiff's knee surgery. Plaintiff then appealed the deputy commissioner's decision to the Full Commission.

In the interim, plaintiff successfully underwent bariatric surgery and lost a substantial amount of weight. Plaintiff then underwent the corrective surgery on her right knee. After the surgeries, plaintiff moved to submit additional evidence to the Full Commission to support her claim that her knee hardware loosened because of

the workplace accidents. She also moved for permission to take additional depositions from her care providers. The Commission granted her motions.

The Commission later entered an opinion and award concluding that plaintiff's right knee surgery was related to her workplace injuries and was compensable. But the Commission concluded that plaintiff "failed to establish that weight loss treatment is medically necessary as a result of her compensable injuries" and denied compensation for plaintiff's bariatric surgery.

Two weeks later, plaintiff moved to reconsider the Commission's opinion and award and requested permission to introduce new evidence. The Commission denied plaintiff's request to introduce new evidence but entered an amended opinion and award that changed its decision with respect to the bariatric surgery.

The amended opinion and award found that the bariatric surgery "was medically necessary to achieve a BMI of less than 40, a prerequisite to allowing Plaintiff to undergo the revision right total knee arthroplasty." Based on this finding, the Commission concluded that the bariatric weight loss surgery was compensable.

Defendants appealed the Commission's opinion and award to the Court of Appeals, challenging a number of rulings, including the award of compensation for the bariatric surgery. *See Kluttz-Ellison v. Noah's Playloft Preschool*, 283 N.C. App. 198 (2022).

With respect to that surgery, the Court of Appeals examined whether the treatment was "directly related to the original compensable injury." *Id.* at 213. The

court held that "while the existence of Plaintiff's weight problem was not directly related to the 5 August 2013 accident, the need for bariatric surgery is directly related" because plaintiff could not undergo her knee surgery until she lost sufficient body weight. *Id.* at 214.

We allowed defendants' petition for discretionary review with respect to this portion of the Court of Appeals' decision.

**Analysis**

In our workers' compensation system, an employee is entitled to compensation for injuries "by accident arising out of and in the course of the employment." N.C.G.S. § 97-2(6) (2023). For many decades, this Court has held that the phrase "arising out of employment" imposes a causal element on workers' compensation claims. *See, e.g.*, *Taylor v. Town of Wake Forest*, 228 N.C. 346, 350 (1947); *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 557 (1960). Thus, to prove claims for workers' compensation benefits, employees must prove that the workplace accident caused their injuries. *Sprouse v. Mary B. Turner Trucking Co.*, 384 N.C. 635, 643 (2023).

We imposed this causal requirement because the Workers' Compensation Act "was never intended to be a general accident and health insurance policy." *Weaver v. Swedish Imps. Maint., Inc.*, 319 N.C. 243, 253 (1987). "This rule of causal relation is the very sheet anchor" of the Act. *Duncan*, 234 N.C. at 91. "It has kept the Act within the limits of its intended scope,—that of providing compensation benefits for industrial injuries, rather than branching out into the field of general health

-6-

insurance benefits." *Id.*

When employees meet this causal requirement, and all other elements of their claim, they are entitled to workers' compensation. This includes "medical compensation," which is defined as medical or rehabilitative treatment that "may reasonably be required to effect a cure or give relief." N.C.G.S. § 97-2(19); *see also id.* § 97-25(c).

But here, too, our appellate courts have imposed a causal requirement to safeguard the purpose of the workers' compensation system. This causal test originated in a Court of Appeals opinion several decades ago, which held it "[l]ogically implicit" that any compensable medical treatment "be directly related to the original compensable injury." *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 130 (1996).

In *Pittman*, the employee suffered a compensable back injury at work that caused difficulty moving and walking. *Id.* at 126, 132. The employee underwent spinal surgery. *Id.* at 131. After the surgery, the employee continued to have trouble walking and sought additional treatment. *Id.* The Industrial Commission denied that treatment request after finding that the employee's symptoms stemmed from a congenital spine defect that was not "caused by" the workplace injury. *Id.* at 131–32.

Applying the "directly related" test, the Court of Appeals in *Pittman* affirmed the Industrial Commission's decision, holding that the Commission's findings supported the "legal conclusion that *plaintiff's current condition* was not related to the original compensable injury." *Id.* at 133 (emphasis added). Importantly, it was

"plaintiff's current condition," not the treatment plaintiff sought, that was the focus of the analysis. *Id.* In other words, the *Pittman* test examines causality between the workplace injury and the condition needing treatment.

Although *Pittman* did not expressly state *why* it was necessary to focus on the condition to be treated, it flows from the same "logically implicit" rationale that *Pittman* relied upon to create the test. Because the "rule of causal relation is the very sheet anchor" of workers' compensation, an award of medical compensation requires a showing that the condition being treated is causally tied to the workplace injury. *Duncan*, 234 N.C. at 91.

For example, suppose an employee who is being treated for a preexisting condition suffers an unrelated workplace injury. The employee's care providers might recommend changing the course of treatment because a new treatment would help the employee recover from the workplace injury more quickly or with less pain. That treatment would therefore "reasonably be required to effect a cure or give relief" from the workplace injury. N.C.G.S. § 97-2(19); *see also id.* § 97-25(c).

Although this new treatment concerns a *preexisting* condition, there are many scenarios where the condition nevertheless is causally related to the workplace injury. Perhaps that workplace injury aggravated the preexisting condition. Perhaps the injury triggered a need for medical treatment or intervention of the condition where none existed before. In these circumstances, awarding compensation for the treatment is consistent with the causal anchor that grounds our workers'

compensation system.

By contrast, there are many scenarios where a preexisting condition has no causal connection to the workplace injury but that condition's treatment nevertheless is impacted by the workplace injury. Imagine an employee undergoing cancer treatment. After a workplace injury, the employee's care providers might recommend changes to that cancer treatment—for example, another round of chemotherapy rather than a surgery that would take place too soon after a surgery for the workplace injury.

In that circumstance, our workers' compensation system does not require the employer to take over the cancer treatment and pay for the chemotherapy. That cancer treatment is part of the employee's general health care and outside the scope of workers' compensation.

Simply put, if there is no causal connection between a workplace injury and a preexisting condition, forcing the employer to pay for treatment of that preexisting condition makes the employer responsible not for the consequences of a workplace accident but for an employee's general health and well-being. That is not workers' compensation; that is health insurance. *Weaver*, 319 N.C. at 253.

For this reason, the Court of Appeals has consistently applied the "directly related" test by examining whether there is "a causal relationship between the medical condition and the work-related injury." *Perez*, 174 N.C. App. at 133; *see also Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 542 (1997); *Adams v. Frit Car, Inc.*, 185

N.C. App. 714, 720 (2007); *Brewer v. Rent-A-Ctr.*, 288 N.C. App. 491, 497 (2023), *vacated on other grounds*, No. 139PA23 (N.C. Feb. 2, 2024) (order). By focusing on that causal relationship between condition to be treated and workplace injury, the Court of Appeals ensured that medical compensation does not undermine the causal sheet anchor that grounds the workers' compensation system.

This Court has referenced the "directly related" test only once, in *Wilkes v. City of Greenville*, 369 N.C. 730 (2017). There, we favorably quoted the test established in *Pittman*, as well as *Pittman*'s conclusion that the test is "[l]ogically implicit" in the structure of the Workers' Compensation Act. *Id.* at 737. And, importantly, we also favorably discussed the focus on a causal connection between the condition for which treatment is sought and the workplace injury, citing *Parsons* and *Perez. Id.* at 740. We noted that, when assessing medical compensation, the analysis turns on whether the "injuries or symptoms," not the treatment, are "causally related to the admittedly compensable condition." *Id.* at 741.

Despite these references to the Court of Appeals test, the holding in *Wilkes* focused on separate issues, and the Court did not expressly adopt the *Pittman* line of cases. We therefore take this opportunity to formally endorse the test that developed in our lower appellate court and that we favorably recognized in *Wilkes*. This "directly related" test, with its focus on the causal connection between the condition to be treated and the workplace injury, safeguards the "rule of causal relation" that we have described as the anchor of the workers' compensation system. *Duncan*, 234 N.C.

at 91.

Under this test, an employee may receive compensation for a medical treatment only if that treatment is directly related to the workplace injury, meaning there is a sufficiently strong causal relationship between the condition that requires treatment and the workplace injury. *Wilkes*, 369 N.C. at 737; *Perez*, 174 N.C. App. at 133. Our case law examining causation in the workers' compensation context offers guidance on how this causal relationship can be established. When examining how one injury, condition, or symptom could be causally related to another, we consider whether the former "caused, aggravated, or accelerated" the latter. *Morrison v. Burlington Indus.*, 304 N.C. 1, 17 (1981).

In the context of a causal relationship between a condition to be treated and a workplace injury, these three factors can be articulated as three separate tests. First, a causal relationship exists when the workplace injury caused the condition for which treatment is sought. Second, a causal relationship exists when the workplace injury materially impacts the condition for which treatment is sought by aggravating that condition or causing new symptoms. Finally, a causal relationship exists if the condition was materially accelerated by the workplace injury—meaning the condition did not require medical treatment or intervention of any kind before the workplace injury but now requires treatment to aid in treatment of the workplace injury. *See id.* at 18.

If any of these criteria are met, the treatment is directly related to the

workplace injury and is compensable. If not, the treatment is, at most, indirectly related to the workplace injury and is not compensable under the workers' compensation system. This causal standard ensures that, although the "employer takes the employee as he finds her with all her pre-existing infirmities and weaknesses," medical compensation will be limited to conditions directly related to the workplace injury and will not "convert our compensation law into a system of compulsory general health insurance." *Id.*

In this case, neither the Industrial Commission nor the Court of Appeals applied the test set out above. The Commission's opinion and award examined only whether the bariatric surgery (the treatment) was "medically necessary" to achieve the requisite weight loss to undergo knee surgery. The Commission did not make any findings or conclusions concerning the causal relationship between plaintiff's body weight issues (the condition) and the workplace injury.

The same is true of the Court of Appeals. The court focused on the treatment, not the condition, holding that "there is a direct line connecting the dots between Plaintiff's original compensable injury and the Commission's award for bariatric surgery." *Kluttz-Ellison*, 283 N.C. App. at 214. Indeed, the Court of Appeals expressly held that plaintiff's body weight issues were *not* causally related to the workplace accident, emphasizing that "while the existence of Plaintiff's weight problem was not directly related to the 5 August 2013 accident, the need for bariatric surgery is directly related." *Id.*

Because the lower courts did not apply the proper legal standard in this case, we reverse the decision of the Court of Appeals and remand with instructions to remand the matter to the Industrial Commission for further proceedings. *See Pine v. Wal-Mart Assocs.*, 371 N.C. 707, 716–17 (2018).

REVERSED AND REMANDED.

Justice RIGGS dissenting.

The Workers' Compensation Act (the Act) mandates that medical compensation include services that "may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the [Industrial] Commission, will tend to lessen the period of disability." N.C.G.S. § 97-2(19) (2023). As the majority recognizes, this paints a broad brush, and understandably so; the facts of workers' compensation claims are infinitely varied. No job is the same, no employee is the same, no accident is the same, no injury is the same, and no treatment is the same. And as the factfinders on the Industrial Commission can attest, even medical experts—to say nothing of judges—often disagree as to the cause, extent, and appropriate treatment of any given injury. While I understand the majority's desire to judicially craft a uniform tripartite test and impose a "directly related" condition on an otherwise silent statute out of a desire to "k[eep] the Act within the limits of its intended scope," *Duncan v. City of Charlotte*, 234 N.C. 86, 91 (1951), I am concerned that the means and end are at cross purposes. An unflinching and uniform test crafted by nonexpert appellate jurists seems all but guaranteed to end up excluding some unforeseen claims—whether due to lapses in our knowledge or imaginations— that fairly fall within the language and intent of the Act. Indeed, as discussed below, it will exclude some claims foreseen both in the majority and this dissent. A test that excludes claims that the legislature intended to cover based on the Act's text does not

in any real sense "k[eep] the Act within the limits of its intended scope." *Id.* Because I do not believe the rigid test adopted by the majority is appropriate or necessary and because I believe the findings and conclusions of the Industrial Commission properly establish Ms. Kluttz-Ellison's bariatric surgery as a treatment "reasonably . . . required to effect a cure or give relief" for a covered injury, N.C.G.S. § 97-2(19), I respectfully dissent.

The majority rightly notes that the Act is not, nor was it intended to be, a general health insurance policy. *Morrison v. Burlington Indus.*, 304 N.C. 1, 11 (1981). And the Act does require a causal relationship between the injury and the workplace accident; specifically, the injury must be "by accident aris[ing] out of and in the course of the employment." N.C.G.S. § 97-2(6) (2023); *see also Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402 (1977). It is this causal relationship between the *injury* and the workplace *accident* that is the "very sheet anchor" of the Act to which the majority refers. *Duncan*, 234 N.C. at 91.

As for compensable treatment, the relevant statute covers

> medical, surgical, hospital, nursing, and rehabilitative services, including, but not limited to, attendant care services *prescribed by a health care provider authorized by the employer or subsequently by the [Industrial] Commission*, vocational rehabilitation, and medicines, sick travel, and other treatment, including medical and surgical supplies, *as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the [Industrial] Commission, will tend to lessen the period of disability*; and any original artificial members as may reasonably be necessary at the end of the healing

> period and the replacement of such artificial members
> when reasonably necessitated by ordinary use or medical
> circumstances.

N.C.G.S. § 97-2(19) (emphases added).  In other words, treatment is compensable under the Act if, in the view of a prescribing authorized healthcare provider, it is reasonably required to effect a cure or give relief to a covered injury or, in the judgment of the Industrial Commission, will lessen the period of a covered disability. Or, stated even more simply, if an authorized doctor believes the treatment is necessary to effect a cure or give relief of a workplace injury, then that treatment is compensable under the statutory text.  To graft additional strictures into the Act, or to second-guess factfinders' reliance on medical professionals' expert judgments in unique circumstances, is not our province.  *See Lunsford v. Mills*, 367 N.C. 618, 623 (2014) ("[I]n effectuating legislative intent, it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used."); *Sprouse v. Mary B. Turner Trucking Co.*, 384 N.C. 635, 642 (2023) ("The North Carolina Industrial Commission is the fact-finding body under the [Act].").

I acknowledge that we have imposed a "directly related" test in the context of *future* medical treatment for continued or additional symptoms.  *Wilkes v. City of Greenville*, 369 N.C. 730, 737 (2017) (holding an employee seeking coverage for psychological symptoms after the employer had admitted compensability for physical injuries was entitled to a presumption that the psychological symptoms were related to his admittedly compensable conditions); *see also Pittman v. Thomas & Howard*,

122 N.C. App. 124, 130 (1996) (holding an employee was not entitled to additional compensation for a new condition when the evidence supported the Industrial Commission's finding that the new condition was not related to a previously-covered injury); *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 542 (1997) (holding an employee was entitled to a presumption that treatment of continuing headaches was causally related to prior covered headaches caused by a workplace injury); *Perez v. Am. Airlines/AMR Corp.*, 174 N.C. App. 128, 135 (2005) (holding a herniated disc discovered two years after last medical compensation for a covered workplace back injury was paid and four years since the covered accident occurred was causally related to that accident and injury). But that is not the circumstance we have here, this case involves a *preexisting* condition that must be treated in order to cure or relieve the covered workplace injury. Importantly, at least in the context of disability, this Court has acknowledged that if "pre-existing conditions such as an employee's age, education and work experience are such that an injury causes him a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated." *Little v. Anson Cnty. Schs. Food Serv.*, 295 N.C. 527, 532 (1978). Not every employee that suffers a knee injury will require a total knee arthroplasty, and fewer still will require bariatric surgery prior to the arthroplasty. But the appropriate medical treatment for an injury is often unique to the employee, and if an authorized medical professional prescribes bariatric surgery

as "required to effect [the] cure" of arthroplasty for that employee's covered workplace injury, then the bariatric surgery is compensable under N.C.G.S. § 97-2(19).

Though the majority's uniform test has an inherent attraction, I cannot say it will avoid results inconsistent with the coverage contemplated by N.C.G.S. § 97-2(19). The majority's own examples illustrate my concerns; in one abstract hypothetical, it suggests that an employee who changes treatment of a preexisting condition to help address pain from a new workplace injury would have those treatment changes for the preexisting condition covered. But it is hard to square that example with the majority's distillation of its test into three circumstances: in the abstract hypothetical, (1) the workplace injury did not "cause[ ] the [pre-existing] condition for which treatment is sought"; (2) the workplace injury did not—at least at the level of abstraction offered by the majority—"aggravat[e] that [pre-existing] condition or caus[e] new symptoms"; and (3) it is not true that "the [pre-existing] condition did not require medical treatment or intervention of any kind before the workplace injury but now requires treatment to aid in treatment of the workplace injury." While there are some specific instances where I might agree that the change in treatment for the preexisting condition is not covered because the new treatment itself does not further the aid "reasonably . . . required to effect a cure or give relief" from the covered injury, there are others—including those where the preexisting condition is neither aggravated or altered by the workplace injury itself—that would be covered under the statutory text consistent with the overall intent of the Act. A holding focused

more on crafting a uniform test rather than ensuring the purposes of the Act are carried out cannot—and the majority's test does not—account for these circumstances.

Imagine a scenario that is slightly different from this case. A worker falls on the job, injuring her knee and requiring surgery to repair the injury. As part of the pre-operative workup, the medical team may order an echocardiogram to ensure that the patient does not have decreased blood flow to the heart prior to attempting the surgery. Roscoe N. Gray & Louise J. Gordy, *Attorneys' Textbook of Medicine*, § 30.42(1) (3d ed. 2010). If the test indicates a preexisting heart condition, previously diagnosed and controlled or mitigated in daily life by a low-dose aspirin regimen or similar noninvasive treatment, but which is too severe to allow for knee surgery without immediate invasive intervention, the health care provider may determine that it is medically necessary to immediately address the preexisting heart condition through more invasive means as a prerequisite to the required knee surgery. And if the factfinders on the Industrial Commission credited adequate expert testimony consistent with that medical determination to find and conclude the heart condition treatment was compensable, that treatment would not be covered under the Act because of its mere existence—the hallmark of general health insurance—but because it *had* to be addressed *in order to* "effect a cure or give relief" for the covered injury, as demanded by statute. And yet, the majority's three-part test would not cover that treatment because: (1) the heart condition had not been caused by the

workplace injury; (2) the injury itself did not aggravate the heart condition or create new symptoms; and (3) the heart condition had previously required some form of treatment.[1]

Stated differently, I would hold that whether a treatment is covered should turn on whether the particular facts of a case, as found by the Industrial Commission based on adequate competent evidence, demonstrate that the treatment was "reasonably . . . required to effect a cure or give relief and for such additional time as, in the judgment of the [Industrial] Commission, will tend to lessen the period of disability," N.C.G.S. § 97-2(19), not on an extra-textual test that, in a noble effort for uniformity and predictability, may still not—and perhaps cannot—account for all circumstances intended to be covered by the legislature.

In these scenarios, the patient may require treatment for the preexisting condition, itself unrelated to the workplace injury in isolation, prior to and as a prerequisite for treatment of the workplace injury. Treatment of these preexisting conditions for the purpose of effecting a cure, giving relief, or lessening the period of

---

[1] Similarly, imagine an employee who suffers from allergies that are safely controlled in daily life by a regular over-the-counter antihistamine regimen and allergen avoidance. Then imagine that the employee requires a medication containing those allergens to treat or diagnose a workplace injury, *e.g.*, intravenous contrast media for x-ray imaging; muscle relaxants; or aspirin. Roscoe N. Gray & Louise J. Gordy, *Attorneys' Textbook of Medicine*, § 65.42 (3d ed. 2010). The majority's three-part test would not cover prophylactic epinephrine, steroids, or other treatments required to address those preexisting allergies' response to the workplace-injury related treatments or medications—allergies that must be safely controlled in order to effectuate a cure of the workplace injury.

disability of a covered workplace injury would not convert the Act into a general health insurance policy. It simply ensures that, pursuant to the stated goals of the statute, a treatment that cures, effects relief, or reduces the period of disability of a covered injury is compensable. And compensability under N.C.G.S. § 97-2(19) in these circumstances would accord with our caselaw establishing that the Act should be liberally construed to effectuate its purpose to provide compensation for injured employees and avoid denying benefits under technical, narrow, or strict construction of its provisions. *See Hollman v. City of Raleigh, Pub. Util. Dep't*, 273 N.C. 240, 252 (1968); *Wilkes*, 369 N.C. at 736–37.

As for the majority's remand, Ms. Kluttz-Ellison sustained a compensable injury to her right knee due to a fall at work. The Industrial Commission found that the injury arose out of and during the course of employment. Both the health care provider and Industrial Commission agreed that Ms. Klutz-Ellison required a "right total knee arthroplasty" to effect a cure, provide relief, and/or lessen the period of disability" for this knee injury. After considering the testimony of several medical professionals as to the necessity of the prerequisite surgery to ensure the success of the arthroplasty, the Industrial Commission found that bariatric surgery was "medically necessary" as "a prerequisite to allowing [Ms. Kluttz-Ellison] to undergo the revision right total knee arthroplasty."

In sum, I cannot sign on to a uniform test that is not compelled by the statutory text and may result in the denial of intended coverage given workers' compensation

claims' infinite permutations. The statute states that treatment prescribed by a medical provider as necessary to effectuate a cure of or relieve a workplace injury is compensable, and the Industrial Commission found that Ms. Kluttz-Ellison's bariatric surgery was medically necessary to effect a cure, provide relief and/or lessen the period of disability of the covered knee injury. I would therefore affirm the decision of the Industrial Commission without remanding the case.

Justice EARLS joins in this dissenting opinion.